**Robert B. McMASTER, Appellant,**

v.

**Janette LOHMAN Director of Revenue, Respondent.**

No. WD 52664.

Missouri Court of Appeals, Western District.

April 1, 1997.

Don A. Peterson, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for respondent.

Before ULRICH, C.J., P.J., and BERREY and EDWIN H. SMITH, JJ.

ULRICH, Chief Judge, Presiding Judge.

Robert B. McMaster appeals the revocation of his driver's license. Mr. McMaster's license was revoked under section 577.041, RSMo 1994, for failure to submit to a chemical test as required by the Implied Consent Law. § 577.020. At issue is whether the failure of law enforcement authority to advise Mr. McMaster of his rights under section 577.041.1 effectively negates the statutory provision revoking his driver's license for refusing to submit to a chemical sobriety test. The trial court ruling that revoked Mr. McMaster's driver's license was erroneous, and the order is reversed.

## BACKGROUND

On February 17, 1996, at 4:40 a.m., a University of Missouri–Kansas City campus officer stopped Robert B. McMaster at 53rd and Cherry Street in Kansas City, Missouri, on suspicion of driving while intoxicated. A Kansas City, Missouri police officer, Officer Gottstein, arrived at the scene at 4:59 a.m., where he directed Mr. McMaster to perform several field sobriety tests. Perceiving that Mr. McMaster was affected by alcoholic beverages, Officer Gottstein recited to Mr. McMaster from memory excerpts of the Implied Consent Law under Missouri statute Section 577.041.1 and asked him to take a breath test. Mr. McMaster refused. Mr. McMaster was arrested for driving while intoxicated at 5:09 a.m. and was transported to the police station.

At the police station, Officer Gottstein again advised Mr. McMaster of the Implied Consent law, reading from the Alcohol Influence Report form 2389 at 5:48 a.m. While attempting to read the *Miranda* warning, Mr. McMaster interrupted the officer and requested to speak to an attorney. He also solicited legal advice from the officer. The officer responded that he could not provide legal advice and that Mr. McMaster would have an opportunity to contact an attorney immediately after the officer had advised him of his rights. At 5:49 a.m., the officer advised Mr. McMaster of his *Miranda* rights. Officer Gottstein then allowed Mr. McMaster to use the telephone. Mr. McMaster attempted, without success, to contact an attorney. During Mr. McMaster's telephone attempts, and without speaking to Mr. McMaster again, Officer Gottstein marked his police report signifying Mr. McMaster refused to take a chemical sobriety test. The time was 5:50 a.m. At the revocation hearing, the trial court found that the officer had given Mr. McMaster proper opportunity to contact an attorney and found in favor of the Director of Revenue. The court ordered Mr. McMaster's driver's license revoked, and this appeal followed.

## APPEAL

Mr. McMaster argues that the trial court was incorrect in revoking his driver's license because the arresting officer did not give him sufficient opportunity to contact a lawyer in compliance with section 577.041.1,[1] nor did he provide him the required information to permit him an informed refusal to take a chemical sobriety test. To uphold a driver's license revocation for failure to submit to chemical testing, the trial court must affirmatively find that (1) the driver was arrested, (2) the arresting officer had reasonable grounds to believe the driver was driving while intoxicated, and (3) the driver refused to submit to the test. § 577.041.4. The Director of Revenue has the burden of proof,

---

1. All statutory references in this opinion are to RSMo 1994.

and failure to satisfy the burden will result in reinstatement of the license to drive a motor vehicle. *Rowan v. Director of Revenue*, 870 S.W.2d 261 (Mo.App. W.D.1994).

INFORMED CONSENT UNDER SECTION 577.041.1

■ Section 577.041 states, "If a person under arrest refuses upon the request of the arresting officer to submit to any test allowed under section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding under section 565.024 or 565.060, RSMo, or section 577.010 or 577.012." *See Blanchard v. Director of Revenue*, 844 S.W.2d 589 (Mo.App. E.D.1993)(Officer is without authority to administer breathalyzer test once a motorist has refused the test). The statute conditions the "refusal" with the following sentence:

> The request of the arresting officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of his refusal to take the test may be used against him and that his license shall be immediately revoked upon his refusal to take the test.

§ 577.041.1. Consequently, no refusal is valid if the arresting officer's "request" omits statutorily necessary information. A driver arrested on charges of driving while intoxicated is entitled to advice according to section 577.041.1, the Implied Consent Law. *Wilmoth v. Director of Revenue*, 903 S.W.2d 595, 598 (Mo.App. W.D.1995). The Implied Consent Law provides the right to counsel to the arrestee and mandates that the arrestee be advised of rights and the consequences of waiving those rights. *Id.* Ultimately the Implied Consent Law permits the arrestee to make informed choices about exercising those rights. *Id.* The requesting officer is not required to use particular words when requesting that a motorist submit to a breathalyzer test if the officer accompanies the request with the reasons for the request and informs the motorist that his license will be revoked if the request is refused.[2] *See Sell v. Goldberg*, 601 S.W.2d 665 (Mo.App. S.D.1980).

■ Officer Gottstein testified that he recited unspecified excerpts of the Implied Consent Law. Apparently he related the unspecified excerpts to learn how Mr. McMaster would "officially" respond at the police station to the request to submit to a chemical sobriety test. Section 577.041 establishes a required and deliberate sequence of events— a request to submit to chemical testing that informs the driver of: (1) the officer's reasons for requesting the test; and provides (2) that evidence of a refusal to take the test may be used adversely against the driver; and (3) that the driver's license shall be immediately revoked upon a refusal to take the test. Until the three requirements of section 577.041 are first met, the section 577.041 twenty-minute waiting period is not triggered.[3] Officer Gottstein did not make a statutorily sufficient "request" until 5:48 a.m. The issue then becomes whether Mr. McMaster ever refused to take the test after 5:48 a.m. The record reflects no such refusal.

■ The Director identifies no act by Mr. McMaster after 5:48 a.m. that consti-

**2.** Officer Gottstein does not claim that his recital by memory was adequate:

> Q: Just so I understand this, when you got to the scene, you performed all these field sobriety tests; is that correct?
> A: Yes.
> Q: At that point you determined you wanted to take him to Metro to take a test?
> A: Yes.
> Q: Are you saying at that point you read him everything in this Implied Consent?
> A: No. I briefly asked him off memory through the Implied Consent which is not official, because I didn't read this. I read it once to Metro and I asked him again whether he would submit to a field sobriety test.

> Q: When you officially read him the implied consent law, that time was around 5:50 or somewhere around 5:48, the time that he asked for an attorney. Let's take a look at your report.
> A: I believe he asked for an attorney sometime between reading him his rights. He asked when he would have time to contact an attorney.

**3.** *Cf. Barnhart v. McNeill*, 775 S.W.2d 259 (Mo. App. W.D.1989) (Revocation of driver's license upon refusal to submit to a chemical test was not impaired where arresting officer did not inform a motorist that evidence of his refusal to take test might be used against him, so long as other conditions of this section were satisfied).

tutes a refusal to take the test. Having read Mr. McMaster the Implied Consent Law at 5:48 a.m., Mr. McMaster's response was to attempt to contact his attorney. This act alone is not sufficient to constitute a refusal under section 557.041. In the context of the Implied Consent Law, a "refusal" means declining to take the chemical test when requested to do so of one's own volition. *Spradling v. Deimeke,* 528 S.W.2d 759, 766 (Mo. 1975). Refusal, in response to a request, occurs by saying "I refuse," by remaining silent, by not blowing into the machine, or by vocalizing some qualified or conditional consent or refusal. *Id.* If a driver qualifies a refusal to submit to chemical testing on consulting with counsel but receives no reasonable opportunity to attempt to do so, no refusal results under section 577.041.4(3). *Albrecht v. Director of Revenue,* 833 S.W.2d 40, 42 (Mo.App.1992). Mr. McMaster's request to speak to an attorney triggered the granting of "twenty minutes in which to attempt to contact an attorney." Section 577.041.1 provides an opportunity for detained persons to consult an attorney before deciding whether to submit to a chemical test to determine the percentage of alcohol within their blood. The statute does not impute the request to speak to an attorney as refusal to submit to the test. The statute provided Mr. McMaster twenty minutes after he was advised of rights within which to contact a lawyer. Mr. McMaster began his attempt to contact a lawyer, and the appropriate form reflects, errantly, that Mr. McMaster refused to take the breath test.

■ The Director advocates that section 577.041 required Mr. McMaster to request an attorney after Officer Gottstein informed him of the Implied Consent Law at 5:48 a.m. despite Mr. McMaster's request to speak to an attorney before he was addressed as required by section 577.041. This is an undue burden on the arrestee and inherently confusing. No matter when the driver requests an attorney—whether before or after an arresting officer recites the Implied Consent Law to the driver—section 577.041.1's twenty-minute waiting period begins running immediately after the officer has informed the driver of the Implied Consent Law.

■ The Director also construes section 557.041.1 to impute to a driver refusal to take the test if twenty minutes expires after being advised as required by section 577.041.1, or if the driver stops trying to contact an attorney assuming that the driver's request to speak to an attorney is properly made. The Director is correct that the purpose of section 557.041.1 is met when the driver attempts to contact an attorney unsuccessfully and the twenty minute statutory period expires or the driver abandons the attempt. A request to speak with an attorney after the provisions of the Implied Consent Law are stated to the arrestee abates the process for the twenty-minute waiting period or until the driver ceases attempting to contact a lawyer and indicates that he intends to make no additional attempts to contact an attorney within the twenty minute period. *Wall v. Holman,* 902 S.W.2d 329, 331 (Mo.App. W.D. 1995).

No evidence of a valid refusal by Mr. McMaster to submit to the test was offered. By recording that Mr. McMaster had refused the test at 5:50 a.m., two minutes after Officer Gottstein informed him of the Implied Consent Law, and absent the necessary showing of futility in the effort to contact an attorney or abandonment of the effort, the arresting officer did not provide a reasonable opportunity for Mr. McMaster to contact an attorney.

The trial court incorrectly applied the law in upholding the revocation of Mr. McMaster's driving license, and the judgment is not supported by the evidence. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The order revoking Mr. McMaster's license is reversed.

All concur.