Mark David SOVAL, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. WD 55726.

Missouri Court of Appeals, Western District.

Sept. 28, 1999.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for Appellant.

Timothy R. Cisar, Lake Ozark, for Respondent.

Before LAURA DENVIR STITH, P.J., LOWENSTEIN and RIEDERER, JJ.

RIEDERER, Judge.

The Director of Revenue ("Director") appeals from the circuit court's judgment setting aside the Director's revocation of Respondent's driving privileges. Because we find that the Director established by a preponderance of the evidence that: (1) the authorities had probable cause to arrest the petitioner for driving while intoxicated; and (2) at the time of arrest, the petitioner's blood alcohol content was at least .10 percent, the judgment is reversed, and this matter is remanded for a new trial.

## Factual and Procedural History

On August 25, 1995, a Morgan County deputy sheriff, officer Bauer, stopped Respondent's automobile for failing to dim his headlights. When officer Bauer approached the vehicle he could smell alcohol, and noticed that Respondent's eyes were bloodshot and that he appeared confused. Respondent told officer Bauer that he drank a few beers at the State Fair. The officer asked Respondent to perform some field sobriety tests. Respondent could not keep his balance during the walk and turn test; he kept putting his foot down on the one-leg stand; and during the horizontal gaze nystagmus test, officer Bauer observed that Respondent had distinct nystagmus at maximum deviation with onset at forty-five degrees. Officer Bauer concluded that Respondent was intoxicated and arrested him. The officer took Respondent into the Morgan County Sheriff's office, and Respondent consented to a breath test. Officer Hammond performed the breath analyzer test. The test result showed that Respondent had a blood alcohol concentration of .17%. The Director sought to suspend or revoke Respondent's driving privileges pursuant to § 302.505, for driving with a blood alcohol concentration in excess of .10%.

On November 6, 1995, Respondent filed a petition for a trial de novo. The trial was held on September 12, 1997. After the evidence was heard, the trial court set aside the Director's action, stating that the Director had failed to comply with its own procedures and regulations. This appeal ensued.

## Standard of Review

A trial court's judgment in a driver's license suspension or revocation case must be affirmed on review, unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Barrett v. Director of Revenue,* 963 S.W.2d 717, 718—19 (Mo.App.1998).

## Discussion

The Director claims that the trial court erred in setting aside the Director's action pursuant to § 302.505 because it misapplied and misconstrued the law and was against the weight of the evidence because: (1) the evidence showed that the arresting officer had probable cause to arrest Respondent; (2) the Director was not required to prove maintenance of the breath analyzer since Respondent did not object to the testimony that his blood alcohol concentration was .17%; (3) the Director was not required to offer into evidence the printout of the test result; and alternatively, (4) the Director proved that the breath analyzer was properly maintained.

In a driver's license revocation or suspension proceeding, the Director must establish by a preponderance of the evidence that: (1) the authorities had probable cause to arrest the petitioner for driving while intoxicated; and (2) at the time of arrest, the petitioner's blood alcohol content was at least .10 percent. *Id.; see* Section 302.505.

## I. Probable Cause

When circumstances and facts would warrant a person of reasonable caution to believe that an offense has been committed, probable cause exists. *Rogers v. Director of Revenue,* 947 S.W.2d 475,

477 (Mo.App.1997). "The determination of whether a police officer has probable cause to make an arrest must be made in relation to circumstances as they appeared to a prudent, cautious, and trained police officer." *Id.*

■ Officer Bauer had probable cause to arrest Respondent for driving while intoxicated. Respondent was pulled over for failure to dim his headlights. Officer Bauer could smell alcohol when he approached Respondent's vehicle, and he noticed that Respondent's eyes were bloodshot and that he appeared to be confused. Respondent also told the officer that he drank a few beers at the State Fair. Further, Respondent did not perform well on field sobriety tests administered by the officer. Respondent could not keep his balance during the walk and turn test; he kept putting his foot down on the one-leg stand, and during the horizontal gaze nystagmus test, officer Bauer observed that Respondent had distinct nystagmus at maximum deviation with onset at forty-five degrees. The Director established by a preponderance of the evidence that the officer had probable cause to arrest Respondent for driving while intoxicated. Thus, we now determine whether the Director established by a preponderance of the evidence, that at the time of the arrest, Appellant's blood alcohol content was at least .10%.

## II. BAC of at least .10%

■ "To introduce evidence of the defendant's BAC, the Director must lay a separate foundation showing the police conformed to the requirements in the Code of State Regulations." *Hill v. Director of Revenue,* 985 S.W.2d 824, 827 (Mo.App. 1998). In laying the foundation the Director must show that the breath analyzer test was performed: (1) by following the approved methods and techniques of the Department of Health, (2) by an operator holding a valid permit, and (3) on equipment and devices approved by the Department of Health. *Threlkeld v. Director of Revenue,* 977 S.W.2d 295, 296 (Mo.App. 1998). Appellant stipulated at trial that

officer Hammond had a valid Type II permit and that a Data Master is an approved breath analyzer machine. Therefore, the sole issue in this case is whether the "approved methods and techniques of the Department of Health" were followed in performing the breath analyzer test.

### B. Foundational Requirements

The two procedures or requirements at issue in this case are: (1) whether the simulator solution had a certificate of analysis; and (2) whether a printout of the test result was necessary to prove the test result. The trial court stated at trial and in its judgment that the Director "failed to comply with its own procedures and regulations." Although the trial court did not specifically state what procedures and regulations the Director did not follow, we assume it was referring to the certification of simulator solution and the printout of the test result.

#### 1. Simulator Solution

■ At trial, Officer Hammond was asked if a certificate of analysis came with the solution he used. Officer Hammond stated that a certificate of analysis did not come with the solution. The Director argues that 19 CSR 25–30.051, effective September 1, 1997, applies. This regulation became effective after Respondent's arrest, but before his trial. We review under the revised regulation. *Plank v. Dir. Of Revenue,* 982 S.W.2d 811, 813 (Mo.App. 1998); *Vilcek v. Director of Revenue,* 974 S.W.2d 602, 604 (Mo.App.1998). The version of 19 CSR 25–30.051(4), applicable here states:

(4) Maintenance reports completed on or after March 26, 1996, and prior to the effective date of this rule shall be considered valid under this rule if a certificate of analysis was supplied with the simulator solution. Maintenance reports completed prior to March 26, 1996, shall be considered valid under this rule if done in compliance with the rules in

effect at the time the maintenance report was conducted.

The maintenance report in this case was completed on August 1, 1995, well before March 26, 1996, after which the regulation requires a certificate of analysis for the simulator solution. The rules in effect at the time the maintenance report was conducted did not address simulator solutions. Therefore, the solution used in this case did not require a certificate of analysis. As such, we find that the maintenance report was done in compliance with the rules.

### 2. Printout of Test Result

 Respondent argues that the only evidence the court had of Respondent's level of intoxication was the testimony of Officer Bauer, since the original printout was not presented at trial. Officer Bauer testified that the printout from the Data Master breath test was not attached to the Alcohol Influence Report. The failure to have such a printout at trial does not necessarily preclude testimony regarding the test results. *Chevalier v. Dir. of Revenue*, 928 S.W.2d 388, 395 (Mo. App.1996). Admission of the printout is not necessary for the Director to satisfy its prima facie burden of proving the test results. *Farin v. Dir. of Revenue*, 982 S.W.2d 712, (Mo.App.1998). 808159 at 3.

### C. Conclusion

The directed verdict entered in favor of Respondent at the close of the Director's case was in error. The judgment entering a directed verdict is reversed, and this matter is remanded for a new trial.

All concur.