**Robert M. BROWN, Appellant,**

v.

**DIRECTOR OF REVENUE,**
**Respondent.**

**No. WD 57758.**

Missouri Court of Appeals,
Western District.

Nov. 14, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 26, 2000.

**168**

David McLane Bryan, Overland Park, KS, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen.,Jefferson City, for Respondent.

Before RONALD R. HOLLIGER, Presiding Judge, PATRICIA BRECKENRIDGE, Judge, and JAMES M. SMART, Jr. Judge.

RONALD R. HOLLIGER, Presiding Judge.

Robert M. Brown appeals the order of the Circuit Court of Clay County, Missouri, revoking his driver's license under § 577.041,[1] for refusing to submit to chemical tests as required by the Implied Consent Law. Section 577.020. At issue is whether the failure of law enforcement authorities to allow Mr. Brown, after his request, the opportunity to contact an attorney before taking the breath test requires the setting aside of his license revocation. The judgment revoking Mr. Brown's driver's license was erroneous and, therefore, is reversed.

## BACKGROUND

On June 19, 1999, at 12:05 A.M., appellant ("Brown") was pulled over by Officer Brian Lawrence of the North Kansas City, Missouri, Police Department. He was asked by Officer Lawrence to submit to field sobriety tests. Mr. Brown advised the officer that he wanted to speak to a lawyer before taking any tests. He was transported to the police station, where he was given the opportunity to use a telephone. Officer Lawrence testified that he gave Mr. Brown a telephone book and told him he had 20 minutes to contact a lawyer, that Mr. Brown attempted to do so and Officer Lawrence even assisted with the calls, and that Mr. Brown apparently was unable to reach a lawyer.

Twenty-two minutes after Mr. Brown began his attempts to reach a lawyer, at 12:40 A.M., Officer Lawrence read to him the *Miranda* warnings and attempted an interview. Mr. Brown refused to submit to an interview. Officer Lawrence then read to him the Implied Consent Law, § 577.041, RSMo Cum.Supp.1998, and asked him to take a breath test. Officer Lawrence's report noted that Mr. Brown responded, "I will not take the test until I talk to my lawyer." Officer Lawrence deemed this a refusal. Mr. Brown then asked to take the breath test. Officer Lawrence testified that Mr. Brown's request came approximately 10 minutes after the Implied Consent Law was read to him and that he refused to administer it to Mr. Brown at that time. Mr. Brown then asked to be transported to a hospital for an independent breath test. Officer Lawrence refused that request as well.

At the revocation hearing, the trial court found in favor of the state and ordered Mr. Brown's driver's license revoked. This appeal followed.

## APPEAL

Mr. Brown raises three points of error in the trial court's order upholding the

---

1. All statutory references herein are to RSMo 1998 Cum.Supp., unless otherwise noted.

revocation of his driver's license. In his first point, he claims the court erred in ruling that the 20–minute waiting period required under § 577.041.1 can occur prior to the request to submit to a chemical test. In his second point, he claims the court incorrectly ruled that the 20–minute waiting period requirement was satisfied prior to the requested chemical test. In his third and final point, Mr. Brown argues the revocation of his driver's license violated his constitutional rights to obtain exculpatory evidence by way of obtaining an independent breath test. Because the case is reversed on other grounds, Mr. Brown's final point is not discussed herein.

## STANDARD OF REVIEW

On review, the trial court's ruling must be upheld unless it is unsupported by substantial evidence, is against the weight of the evidence, or misstates or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). To uphold the revocation of a driver's license for refusal to submit to a chemical test, the trial court shall determine only the following: 1) whether the driver was arrested; 2) whether the arresting officer had reasonable grounds to believe the driver was driving while intoxicated; and 3) whether the driver refused to submit to the test. *McMaster v. Lohman*, 941 S.W.2d 813, 815 (Mo.App. 1997); *Borgen v. Director of Revenue*, 877 S.W.2d 172, 174 (Mo.App.1994). The Director of Revenue has the burden of proof, and failure to satisfy the burden will result in the reinstatement of the driver's license. *McMaster*, 941 S.W.2d at 815–16.

The state argues that the trial court did not have jurisdiction to consider Mr. Brown's Petition for Review because it stated no grounds for setting aside the revocation. Mr. Brown's *pro se* petition states that he "petitions the Court pursuant to Sections 302.311 and 577.041, RSMo for a hearing *de novo* on the administrative revocation of his driving privilege." The petition also incorporated as an exhibit the Director of Revenue's Notice of Revocation for Refusal to Submit to Alcohol/Drug Chemical Test. The state contends specifically that the trial court's subject matter jurisdiction is not invoked unless the petition sets forth the grounds to set aside the revocation. We find that the cases relied upon by the state are inapposite or do not support the point urged by the state.

*Cox v. Director of Revenue*, 974 S.W.2d 633 (Mo.App.1998), *Pointer v. Director of Revenue*, 891 S.W.2d 876 (Mo.App.1995), and *Stallmann v. Director of Revenue*, 816 S.W.2d 6 (Mo.App.1991) are not refusal cases under § 577.041. *Cox* and *Pointer* are cases involving review under § 302.311, which does not explicitly state what the contents of a petition for review must be. It does set forth the time limits for seeking review (30 days), the type of appeal hearing (*de novo* ), and that the appeal is from a denial, withholding, suspension or revocation of a drivers' license by administrative action of the Director of Revenue. In *Cox*, the driver filed a petition seeking limited (hardship) driving privileges. He had been assessed 12 points against his license for a charge of driving while intoxicated, his license had been revoked for one year, and he was notified that he would not be eligible for reinstatement for 10 years pursuant to § 303.060(9) RSMo Cum.Supp.1996. Rather than filing a petition for review under § 302.311, he filed an application for limited (hardship) privileges under § 302.309. The petition did not ask for relief from the Director's purported notice of ineligibility for 10 years or for relief from the Director's purported decision. Nevertheless, the trial court purported to rule on the merits as to when Mr. Cox would be eligible for reinstatement. *Cox*, 974 S.W.2d at 634. Similarly, *Pointer* involved a petition for review, attacking only a revocation for accumulation of points and then seeking at trial a determination of a future eligibility reinstatement date under § 302.060(9). The court in *Pointer* agreed with the Director's argument that the trial

court lacked subject matter jurisdiction. In both *Cox* and *Pointer*, the appellate court held that the trial court erred in granting relief concerning the eligibility reinstatement date when no such relief was sought in the petition.

We believe the Director's argument confuses the term "grounds" in those opinions with the concept of reasons or theories that support the argument attacking a specific action by the Director.[2] We acknowledge that *Stallmann* seems to equate the term "grounds" with a theory or reason for relief. The reason given by the trial court for ordering reinstatement was held by the appellate court to not be an element of the Director's burden.[3] *Stallmann*, 816 S.W.2d at 7. The court did not reject the argument on a jurisdictional basis.[4]

■ The distinction discussed was *sub silentio* recognized recently by the Eastern District, when it applied the principle to a situation where relief was granted (expungement of a conviction) that was not sought by the petition. *Kayser v. Director of Revenue*, 22 S.W.3d 240 (Mo.App.2000). The Missouri Supreme Court has addressed the issue of subject matter jurisdiction, albeit in a different context, for a petition for review under § 303.311. In *Jackson v. Director of Revenue*, 893 S.W.2d 831 (Mo. banc 1995), the Court rejected the contention and overruled many cases holding that a petition for review that did not name the Director of Revenue in the caption did not invoke the subject matter jurisdiction of the court. The court said, "[s]ubject matter jurisdiction is merely the court's power to hear and determine the matter involved in the case. The court's power exists where the petitioner meets the requirement of the statute that provides for review of the driver's license suspension or revocation...." *Id.* at 833. The court said further that the second element of a petition that invokes subject matter jurisdiction is clear demonstration that the "suit seeks review of a driver's license suspension or revocation." *Id.*[5] Here, Mr. Brown's petition for review sought a hearing regarding the revocation of his driving privilege, pursuant to §§ 302.311 and 577.041. Under § 577.041.4, such relief is clearly provided for, stating, "[i]f a person's license has been revoked because of the person's refusal to submit to a chemical test, such person may petition for a hearing before a circuit or associate circuit court in the county in which the arrest or stop occurred." Further, the body of Mr. Brown's petition made clear that he sought review of the revocation of his driver's license. It is implicit in the Director's burden that he proves a proper refusal of the chemical test. Whether an opportunity to consult counsel was provided, if requested, is an element of a voluntary refusal even though it must be raised by the petitioner. We do not agree that a jurisdictionally sufficient petition for review must set forth every theory or reason the petitioner believes the refusal was not

---

2. It is important to note that neither *Cox* nor *Pointer* could have properly achieved the relief granted by the trial court, even if pleaded. Our Supreme Court has held that the issue of an eligibility reinstatement date is not ripe until the driver actually seeks reinstatement and is denied a license. *Adkisson v. Director of Revenue*, 891 S.W.2d 131, 133 (Mo. banc 1995).

3. In *Stallmann*, the license was suspended for failure to demonstrate proof of financial responsibility pursuant to § 303.024. He attempted to argue, and the trial court erroneously agreed, that the Director was required to prove that he both owned and operated the vehicle.

4. The other case cited by *Stallmann, Pointer* and *Cox* is *Cillo v. Director of Revenue*, 782 S.W.2d 81 (Mo.App.1989); although there the court refused to consider a reason for setting aside the license suspension that was not pleaded, it did not characterize the petition as failing to invoke the subject matter jurisdiction of the court.

5. We are not required to, and do not, address whether a petition, such as filed by Brown, may be deficient in other respects or subject to a Rule 55.27 motion. The Director only argues the issue of subject matter jurisdiction.

valid. Certainly, under these facts and this pleading, the trial court did not lack subject matter jurisdiction.

### Requirements of Implied Consent Law

 Under Missouri law, a person operating a vehicle is deemed to have impliedly consented to a chemical test for blood alcohol if certain prerequisites are met. A driver is entitled, however, to withdraw that consent, though the consequence of such withdrawal is revocation of the driver's operating privilege. This severity of consequence has led the General Assembly to require that the driver be given a warning of the state's request for the test and the consequences of refusal, i.e., withdrawal of implied consent. If the driver does not make a voluntary withdrawal of the statutory implied consent, then his refusal cannot be the basis for revocation. The uncontroverted evidence in this case shows that Mr. Brown did not submit to the breath test. A driver's license may be revoked for refusing to submit to a chemical test, but the revocation is conditioned upon the arresting officer making a "statutorily sufficient 'request'" that the driver take the test. *Lorton v. Director of Revenue*, 985 S.W.2d 437, 440 (Mo.App.1999). A statutorily sufficient request is one which complies with the requirements of § 577.041.1, the Implied Consent Law, which states, "[i]f a person under arrest ... refuses upon the request of the officer to submit to any test allowed under section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding pursuant to section 565.024 or 565.060, RSMo, or section 577.010 or 577.012." Section 577.041.1. *See also, Blanchard v. Director of Revenue*, 844 S.W.2d 589, 590 (Mo.App.1993) (officer is without authority to administer breathalyzer test once a motorist has refused the test). The statute conditions the "refusal" as follows:

> The request of the officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test. If a person when requested to submit to any test allowed under § 577.020 requests to speak to an attorney he shall be granted twenty minutes to attempt to contact an attorney. If upon the completion of the twenty minutes period he continues to refuse to submit to any test it shall be deemed a refusal.

Section 577.041.1. This right to counsel is provided by the civil statute and is not an extension from any constitutional right under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

 No refusal is valid if the arresting officer's "request" omits statutorily necessary information. Under the Implied Consent Law, a driver arrested on charges of driving while intoxicated is entitled to advice. § 577.041.1. The Implied Consent Law mandates that the arrestee be advised of his rights and the consequences of waiving those rights. *Id.* It permits the arrestee to make informed choices about exercising his rights. *Id.*

Officer Lawrence testified as follows. He transported Mr. Brown to the police station and handed him a telephone book because he had requested an attorney. He advised Mr. Brown he had 20 minutes to contact an attorney, and then the investigation would continue. Mr. Brown made numerous phone calls and, after 22 minutes passed, at 12:40 A.M., Officer Lawrence advised Mr. Brown of the right to remain silent and to talk to a lawyer. After attempting to interview Mr. Brown, during which Mr. Brown refused to answer or said he would remain silent, Officer Lawrence read to him the Implied Consent Law, at 12:48 A.M. Officer Lawrence admitted on cross-examination that in his report, he indicated that Mr. Brown "refused to take the test, stating I will not take the test until I talk to a lawyer."

■ Mr. Brown argues that the most recent decisions of this district absolutely require the 20 minute period to initiate only upon giving of the Implied Consent Law. "Until **the three requirements of section 577.041 are first met the section 577.041 twenty-minute waiting period is not triggered.**" *McMaster,* 941 S.W.2d at 816 (emphasis added). The Director argues that prior decisions of this district that have never been overruled or distinguished hold that the purpose of the § 577.041 20–minute waiting period is satisfied if the 20 minutes is provided **before or after** the Implied Consent Law advice is given. *Wilmoth v. Director of Revenue* 903 S.W.2d 595, 600 (Mo.App. W.D.1995). Both the Director and Mr. Brown claim that *Wilmoth* and *McMaster* are inherently in conflict and ask for a bright line clarification. We agree.

It is patently obvious that, among counsel for drivers, the Director, and the courts, there is much confusion and disagreement as to how and when the 20 minute waiting period is satisfied. One source of confusion arises in the ways various law enforcement officials perform their task when confronted with suspected drunken drivers and confronted with different sequences of events. In some cases, it appears that officers have given *Miranda* warnings at the scene of an arrest with no discussion of a chemical test or the Implied Consent Law (*Wilmoth, supra*); in others, a *Miranda* warning is given with some mention of a chemical test but no advice as to the Implied Consent Law (*McMaster, supra*); and in others, a *Miranda* warning, the test request, and Implied Consent Law advice, are all given serially without significant time intervals (*Marsey v. Director of Revenue,* 19 S.W.3d 176 (Mo.App.2000)). There may well be excellent reasons for officers to follow these steps in different sequences when confronted with different and varying time intervals between the steps. There appears to be no one logic that would compel, as a matter of law, every police officer to pursue each step in an identical manner. Concomitantly, however, it seems illogical that courts reviewing implied consent revocations should find great factual or legal significance in the particular sequence of events.

■ An additional complicating factor arises from the difference in the rights to counsel provided by § 577.041 and *Miranda, supra.* The right to counsel under *Miranda* is absolute and unconditional in the sense that there is no time limit and there is no adverse consequence from refusing to speak to authorities. By contrast, the right to counsel under § 577.041 is qualified and conditional in that the driver is entitled to only 20 minutes to attempt contact with a lawyer, and there is an adverse consequence for failing to take the chemical test after the 20 minutes has passed (revocation of the driver's license). Because of these differences, and because the average citizen would likely be more aware of the *Miranda* rights, such a citizen may view his rights and the consequences of exercising those rights under § 577.041 in the same manner that the exercise of those rights would be applied under *Miranda.* For example, under *Miranda,* it would be very reasonable for a citizen to refuse to answer authorities' questions if he were unsuccessful in contacting an attorney for 20, 40, 60 minutes, or any period of time. There is no adverse legal consequence and, in fact, generally, law enforcement would be prohibited from asking more questions. But with the Implied Consent Law, it might be foolhardy and have serious legal consequences for a driver to continue to refuse the test if 20 minutes was not sufficient time within which to contact an attorney, since the consequence (revocation) automatically results whether an attorney is consulted or not.

In *Wilmoth,* the officer advised the driver at the scene that she would be asked to take a test at the station; 15 minutes later, at the station, she was given a *Miranda* warning and she asked to speak to an

attorney. She was given 40 minutes to reach an attorney but was unsuccessful. After that 40 minutes passed, the officer attempted to interview her and she refused, her refusal conditioned upon talking to her attorney. This, of course, she had a perfect right to do without any adverse legal consequence. Immediately, the officer advised her of the Implied Consent Law and requested her to take a breath test. Again, she refused, conditioned upon speaking to an attorney. The officer considered this response to be a refusal and ultimately her license was revoked. On appeal from the circuit court review of the revocation, Wilmoth argued that she was entitled to an additional 20 minutes to contact an attorney after the Implied Consent Law advice. This court held:

> The twenty-minute provisions of section 577.041.1 are satisfied when the driver has a reasonable opportunity of up to twenty minutes to contact an attorney after being informed of the obligation to submit to chemical testing and after receiving the *Miranda* warning even though the driver again requests an attorney after receiving the Implied Consent Law advice. **Once the purpose of the statute has been satisfied, to allow the driver an additional twenty minutes would cause unwarranted delay.**

*Wilmoth,* 903 S.W.2d at 599–600 (emphasis added).

In *McMaster,* the sequence of events was different. At the scene, the officer recited from memory "excerpts" of the Implied Consent Law and asked McMaster to take a breath test. McMaster refused. At the station at 5:48 A.M., the officer first read the exact language of the Implied Consent Law, followed by the *Miranda* warning; upon request, McMaster was given a chance to contact an attorney but the officer immediately marked his report to signify a refusal to take the breath test. On appeal from the revocation

of his license, McMaster argued that the 20–minute period is not triggered until the Implied Consent Law advice is given. The Director argued that § 577.041 required McMaster to request an attorney *after* being given the Implied Consent Law advice. This court held:

> No matter when the driver requests an attorney—whether before or after an arresting officer recites the Implied Consent Law to the driver—**section 577.041.1's twenty-minute waiting period begins running immediately [6] after the officer has informed the driver of the Implied Consent Law.**

*McMaster,* 941 S.W.2d at 817 (emphasis added).

Obviously, the two cases are factually distinct is several respects. More crucial is whether and which of these distinctions are significant. The most apparent and legally significant factual distinction is that, in *McMaster,* the driver was **never** provided 20 minutes to contact an attorney, whereas in *Wilmoth,* the time was provided, albeit before the Implied Consent Law advice was given. The Director argues that we should follow *Wilmoth,* asserting that it stands for the proposition that under § 577.041.1, it does not matter when the 20 minutes to contact an attorney is provided as long as it is provided. Mr. Brown, on the other hand, argues that we are required to follow *McMaster,* as the most recent decision of this court and that § 577.041.1 requires that the opportunity to contact an attorney be provided after the Implied Consent Law advice is given.

We had occasion again to consider this issue, in *Lorton, supra.* There, Lorton was advised of his *Miranda* rights and, upon arrest, requested an attorney but was unsuccessful in his attempts to contact one. We said:

> ly" that time begins to run depends upon when the officer provides the opportunity.

---

**6.** Clearly the reference is to a twenty-minute period to contact counsel after advise under the Implied Consent Law. How "immediate-

Although Mr. Lorton was given the twenty-minute period, it was prior to, rather than after, he was read the Implied Consent Law. After Officer Olinger read the Implied Consent Law to Mr. Lorton, only eight minutes elapsed before Mr. Lorton was asked to submit to the test and he was written up for a refusal. **Therefore, the requirements of § 577.041.1 were not satisfied.**

*Lorton*, 985 S.W.2d at 441 (emphasis added).

We reject the position of the Director that the purpose of § 577.041.1 is satisfied no matter when the 20 minutes is provided. The statute is written in clear, direct and mandatory language. It is not for us to rewrite the statute to say that 20 minutes anytime is substantial compliance. As in *McMaster* and *Lorton,* the officer here failed to comply with the statutory mandate that, upon request, a driver be afforded 20 minutes to contact an attorney after he has been advised of the Implied Consent Law. But our inquiry does not stop here.

██ In *Lorton,* we said that the principles of *Teson v. Director of Revenue,* 937 S.W.2d 195, 198 (Mo. banc 1996) were also applicable in this type of case. *Lorton,* 985 S.W.2d at 442. *Teson* adopted an actual prejudice standard for determining whether relief should be granted where the content of the Implied Consent Law varied from the statutory language of § 577.041. The statute requires the driver be advised that if he or she fails to consent to the test, then his or her license "shall be immediately revoked." The officer in *Teson* omitted the word "immediately." There, the Supreme Court found that "[w]hile it [was] true ... that the warning he received violated the technical command of the statute, [the Court was] unable to perceive any prejudice that resulted from the omission...." *Teson,* 937 S.W.2d at 198. Under the actual prejudice standard adopted, the issue is "whether an arrestee's decision to

refuse to submit to a chemical test is an informed one," so it must be determined "whether the warning was so deficient as actually to prejudice the arrestee's decision-making process." *Id.* at 196. In *Lorton,* we therefore described the issue as "whether prejudice ... was eliminated by the fact of afford[ing] over twenty minutes in which to attempt to contact an attorney prior to being advised on the Implied Consent Law." *Lorton,* 985 S.W.2d at 442. The issue was left for another day because Lorton had no license at the time of his arrest and could not, therefore, have suffered actual prejudice. That day has now arrived.

We agree that our decision in *Wilmoth* is in conflict with these principles. *Wilmoth* may be viewed as in effect applying, although undescribed, a prejudice standard, in finding that, if 40 minutes was not enough to find an attorney, then, in the absence of some contrary evidence, another 20 minutes was not likely to be of greater success. However, to the extent that it suggests that the 20 minute period can begin to run before the giving of the Implied Consent Advice that the purpose of § 577.041.1 is satisfied regardless of when the time is provided, then *Wilmoth* is overruled.

Thus, where the officer has violated the statutory requirement to afford a driver 20 minutes to call an attorney after the Implied Consent Law advice, regardless of whether the request comes before or after that advice, then the court must view all the evidence to determine actual prejudice. The court may consider the various sequences of warnings (*Miranda* and Implied Consent Law) and events. The court can consider the effect of an officer providing time after the *Miranda* warning before giving the Implied Consent Law advice.

██ If 20 minutes is provided before the Implied Consent Law advice, § 577.041 thus violated, the court should look carefully at any case of "deemed refusal" [7] for

7. A "deemed refusal" occurs when the driver by act or word but without express refusal

several reasons. Where a *Miranda* warning has been given, the right to consult counsel is absolute and is not limited by time. If the driver tries unsuccessfully to contact counsel before the Implied Consent Law advice, it should be clear in the record, when he repeats his request or refers to the earlier request for counsel (potentially a "deemed refusal"), whether he or she will or will not be given additional time. If not to be given additional time, it should be clearly shown that (unlike with the *Miranda* warning) there will be the immediate consequence of revocation. The arrestee who knows that he has already been provided all the time to reach counsel that the Implied Consent Law requires may wish to reconsider a refusal qualified by a request for counsel. Such a review by the court for prejudice then would eliminate the conundrum present in *Wilmoth*, that a "...qualified refusal amounted to an unequivocal refusal." *Wilmoth*, 903 S.W.2d at 600. A "deemed" refusal should be reviewed most cautiously as opposed to an express refusal, with awareness by the driver that no additional time will be allowed and of the consequences of the continued qualified refusal. Because the ultimate goal is that any refusal to take a test is voluntary and unequivocal, the requirement that the officer take some minimal additional step to obtain such a refusal is warranted.[8]

■ Here, Mr. Brown was given his 20 minutes before the Implied Consent Law advice was given and he was unsuccessful in reaching his attorney. When given the Implied Consent Law advice, he again requested counsel. The officer deemed that response a refusal. About 10 minutes later, Mr. Brown expressed a desire to take the test if revocation were to be the consequence of his continued request to contact counsel. The officer nevertheless refused

to administer the test. The officer violated the requirements of § 577.041.1, and under the facts and circumstances herein, that failure was prejudicial. The judgment of the trial court is reversed and the cause remanded for entry of an order directing the Director to set aside the revocation of Mr. Brown's driving privileges.

BRECKENRIDGE, Judge, and SMART, Judge, concur.[9]

---

indicate an intent not to take the test, or conditions any consent.

8. A requirement by the legislature in § 577.041.1 that the officer advise the driver that only 20 minutes is provided to contact an

attorney and a refusal after that time will result in revocation would eliminate many of these problems.

9. This opinion has been reviewed and approved by order of the Court en banc.