James L. LONG, Jr., Respondent,

v.

DIRECTOR OF REVENUE, State of Missouri, Appellant.

No. WD 59257.

Missouri Court of Appeals, Western District.

Nov. 27, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 2002.

Kenneth M. Dake, Sedalia, for Respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Asst. Atty. Gen., Jefferson City, for Appellant.

Before EDWIN H. SMITH, P.J., and HOWARD and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

The Director of Revenue ("Director") appeals from the trial court's judgment in favor of James Long, Jr., permanently enjoining the Director from revoking Long's driving privileges under § 577.041 [1] for refusing to submit to a chemical test. The Director contends that the trial court erred in entering its judgment because the evidence established that Long was arrested, the arresting officer had reasonable grounds to believe that Long was driving while intoxicated, and Long refused to submit to the test after he abandoned his attempts to contact an attorney.

We vacate and remand.

### Facts

On May 15, 2000, James Long was arrested for driving while intoxicated. The Director notified Long that his driving privileges would be revoked due to his failure to take a chemical test. Long filed his application for review of the Director's decision in the trial court on May 23, 2000. [2]

---

**1.** All statutory references are to RSMo Cum. Supp.1999.

**2.** Long also filed an application for temporary injunction with the trial court, which the court granted. The temporary injunction restrained the Director from making any order revoking or denying Long's driving privileges "until further order of the Court upon final hearing of this cause."

The evidence adduced at the hearing was as follows.

Officer Daniel Keltner of the Sedalia Police Department testified that after arresting Long on suspicion of driving while intoxicated, he read Long the Implied Consent Law. Keltner testified that after he read Long the Implied Consent Law, Long asked for an attorney, and Keltner gave him an opportunity to call an attorney. Keltner told Long that he had twenty minutes to contact an attorney. Long immediately used his cellular phone to make two phone calls. Keltner testified that the first phone call lasted approximately five minutes and the second call lasted approximately one minute. Keltner testified that as soon as Long finished the second phone call, he asked Long if he would take the test, and Long said no. Keltner testified that it was his impression that following Long's second phone call, he believed Long had contacted his attorney. Long did not ask for more time to try to reach an attorney. Keltner testified that he "gave him 20 minutes to make an answer, and he made it before the 20 minutes were up." Following the phone calls, Keltner did not ask Long if he needed more time to contact an attorney.

At the close of the Director's evidence, Long moved for judgment in his favor on the basis that § 577.041 requires a twenty-minute waiting period after the arrestee asks for an attorney. The court denied Long's motion on the basis that the evidence to that point had demonstrated that Long was granted time to talk to an attorney and he did in fact talk to his attorney.

Long testified that he did not remember Keltner telling him he had twenty minutes to contact an attorney. He testified that the first phone call he made was to his employer, and the second phone call was an unsuccessful attempt to contact his attorney. Long testified that he did not attempt to make any more phone calls after the second call. Long testified that while he was trying to make his calls, Keltner told him to "hurry up," and that Keltner was verbally "pushing" him.

Following closing statements, the court stated as follows:

If the testimony as it finally came in were that Mr. Long had, in fact, talked to an attorney and then declined to take the test, despite the language of the statute, I think that the statute probably does not mean that you have to wait 20 minutes when the person has fully talked to his attorney.

But based on the record that's before us, there's a dispute as to whether that happened. The officer said that Mr. Long told him he had talked to Ken Dake, but Mr. Long says that he only got Ken Dake's answering machine.

And since it's not clear that Mr. Long had 20 minutes to contact an attorney, and since the evidence he presents is that he did not, in fact, talk to his attorney, then I'm going to find that there was a failure to allow 20 minutes, and find the issues in favor of Petitioner.

On September 29, 2000, the court entered judgment in favor of Long, on the basis that Long "was not allowed twenty (20) minutes to contact an attorney."[3] This appeal follows.

### Argument

The Director's sole point on appeal is that the trial court erred in reversing the revocation of Long's driving privileges un-

---

**3.** The court's judgment made permanent the temporary stay order it entered on May 23, 2000.

der § 577.041 for refusing to submit to a chemical blood alcohol test because the trial court misinterpreted the law in that the evidence established that Long was arrested, the arresting officer had reasonable grounds to believe that Long was driving while intoxicated, and Long refused to submit to the test after he abandoned his attempts to contact an attorney.

■■■■ "A trial court's judgment in a driver's license suspension or revocation case must be affirmed on review, unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Soval v. Dir. of Revenue*, 2 S.W.3d 854, 856 (Mo.App. W.D.1999).

In assessing if there is substantial evidence, we must defer to the trial court on factual issues and cannot substitute our judgment for that of the trial judge. *Thurmond v. Director of Revenue*, 759 S.W.2d 898, 899 (Mo.App.1988). Such deference is not limited to the issue of credibility of witnesses, but also to the conclusions of the trial court. *Kitchens v. Missouri Pacific Railroad Co.*, 737 S.W.2d 219, 222 (Mo.App.1987). Appellate courts view the evidence in the light most favorable to the trial court's judgment, *Thurmond*, 759 S.W.2d at 899, and we deem all facts to have been found in accordance with the result reached by the trial court. *Askins v. James*, 642 S.W.2d 383, 386[2] (Mo.App.1982). A trial court is accorded wide discretion even if there is evidence that would support a different result. *Thurmond*, 759 S.W.2d at 899. In a driver's license revocation case, a trial court has the prerogative when weighing witness credibility, to accept or reject all, part, or none of the testimony of any witness. *Id.*

*Hawk v. Dir. of Revenue*, 943 S.W.2d 18, 20 (Mo.App. S.D.1997).

In *McMaster v. Lohman*, 941 S.W.2d 813, 815–16 (Mo.App. W.D.1997), we stated as follows:

To uphold a driver's license revocation for failure to submit to chemical testing, the trial court must affirmatively find that (1) the driver was arrested, (2) the arresting officer had reasonable grounds to believe the driver was driving while intoxicated, and (3) the driver refused to submit to the test. § 577.041.4. The Director of Revenue has the burden of proof, and failure to satisfy the burden will result in reinstatement of the license to drive a motor vehicle.

Section 577.041.1 provides as follows:

If a person under arrest, or who has been stopped pursuant to subdivision (2) or (3) of subsection 1 of section 577.020, refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding pursuant to section 565.024 or 565.060, RSMo, or section 577.010 or 577.012. The request of the officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test. *If a person when requested to submit to any test allowed pursuant to section 577.020 requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney. If upon completion of the twenty-minute period the person continues to refuse to submit to any test, it shall be deemed a refusal.* In this event, the officer shall, on behalf of the director of revenue, serve the notice of license revocation personally upon the person and shall take posses-

sion of any license to operate a motor vehicle issued by this state which is held by that person. The officer shall issue a temporary permit, on behalf of the director of revenue, which is valid for fifteen days and shall also give the person a notice of such person's right to file a petition for review to contest the license revocation.

(Emphasis added.)

 Section 577.041.1 provides a twenty-minute opportunity for detained persons to consult an attorney before deciding whether to submit to a chemical test. *Schmidt v. Dir. of Revenue,* 48 S.W.3d 688, 691 (Mo.App. W.D.2001), citing *McMaster,* 941 S.W.2d at 817. "Section 577.041.1's twenty-minute waiting period begins running immediately after the officer has informed the driver of the Implied Consent Law." *Id.* In the context of the Implied Consent Law, a "refusal" to submit to a chemical test means declining to take the test of one's own volition when requested to do so. *Id.*

[T]he purpose of section 557.041.1[sic] is met when the driver attempts to contact an attorney unsuccessfully and the twenty minute statutory period expires or the driver abandons the attempt. A request to speak with an attorney after the provisions of the Implied Consent Law are stated to the arrestee abates the process for the twenty-minute waiting period or until the driver ceases attempting to contact a lawyer and indicates that he intends to make no additional attempts to contact an attorney within the twenty minute period.

*McMaster,* 941 S.W.2d at 817.

The Director contends that this case is similar to *Wall v. Holman,* 902 S.W.2d 329 (Mo.App. W.D.1995). In *Wall,* a motorist who had been arrested was read the Implied Consent Law and was asked to take a breathalyzer test. *Wall,* 902 S.W.2d at

330. The motorist refused to take the test and asked to contact an attorney. *Id.* She then made two telephone calls in an attempt to contact an attorney, but was unsuccessful. *Id.* The motorist was then transferred to a hospital for a blood test. *Id.* After arriving at the hospital, the motorist was again read the Implied Consent Law, and she refused to submit to a blood test. *Id.* At that point, the officer determined that the motorist refused to take the tests. *Id.* Seven minutes had elapsed between the time the motorist refused to take the test initially and requested an attorney and the time she was deemed to have finally refused the test. *Id.* The officer testified at trial that he did not offer to let the motorist take the test again. *Id.* There was a factual dispute as to whether the motorist asked to contact a lawyer when she was at the hospital. *Id.* The trial court denied the motorist's application to set aside the revocation of her driving privileges. *Id.* On appeal, the motorist contended that she was not granted twenty minutes to contact an attorney, and therefore she could not be deemed to have refused to submit to the test. *Id.* In finding the motorist's contention to be without merit, we stated as follows:

[T]he purpose of the "twenty-minute" provision in section 577.041.1 is to provide a motorist with a reasonable opportunity to contact a lawyer. The purpose of section 577.041.1 is met when the driver unsuccessfully attempts to contact a lawyer or lawyers and abandons the attempt. The statutory language permits a motorist up to twenty minutes to contact an attorney if the arrested party wants to speak to an attorney to obtain legal advice. It does not, however, mandate that arresting officers wait until the expiration of the twenty minutes if the driver has made all the attempts he wants to make and reaches a

decision to refuse to submit to the test before the twenty minutes has elapsed. To hold otherwise would give a motorist an absolute right to delay the process for twenty minutes even if the person ceases attempting to contact a lawyer and indicates exactly what he intends to do.

*Id.* at 331. We held that as the trier of fact, the court could have believed the officer and found that the motorist abandoned any further attempt to contact a lawyer after her lack of success at the police station and her refusal to take the blood test. *Id.* We found that the motorist was given a reasonable opportunity to contact an attorney when she was allowed to make two phone calls and ceased in her attempt to obtain legal advice. *Id.* Therefore, we held that the trial court did not err in finding that the motorist refused to submit to a chemical test. *Id.*

■■■ There is no question that Long asked to speak with an attorney prior to deciding whether to take the test, and the officer told him he would have twenty minutes to do so. The twenty-minute window mandated by the Legislature was opened. It is up to the Director to show that Long voluntarily closed it before twenty minutes expired, abandoned his attempts and thereby refused the test. The question becomes: did Long cease attempting to contact a lawyer and indicate he intended to make no additional attempts to contact an attorney within the twenty-minute period? *McMaster,* 941 S.W.2d at 817. Any refusal to take the test must be of the driver's "own volition." *Id.* "A 'deemed' refusal should be reviewed most cautiously as opposed to an express refusal...." *Brown v. Director of Revenue,* 34 S.W.3d 166, 175 (Mo.App. W.D.2000). "[T]he ultimate goal is that any refusal to take a test

is voluntary and unequivocal...." *Id.* Of course, the simplest way to be sure is to give the driver the period of time mandated by the Legislature when, in 1991, it replaced "reasonable opportunity" to contact a lawyer with the twenty-minute requirement. But that did not happen here.

■■■ In *Wall,* we deferred to the trial court's assessment and interpretation of the evidence. Similarly, in the present case, we defer to the trial court's interpretation of the evidence and its conclusion that Long did not abandon his attempts to contact an attorney.[4] There was substantial evidence before the trial court to support such a finding. The officer said he told Long he would have twenty minutes to contact a lawyer. However, Long testified that Kelton told him to "hurry up," and was talking to him and verbally "pushing" him as he was trying to make his calls. Immediately after Long hung up from the second call, which was six minutes into the twenty-minute period, Keltner asked him to take the test, which request he declined. The officer never asked him if he wished to make further attempts, which could have cleared the matter up. At that point, Long had not yet reached an attorney. There is no evidence that he was just sitting there or that he indicated he was finished calling. In fact, Long said he was making the calls as fast as he could because he was being told to "hurry up." He certainly had most of the twenty minutes left to use.

Absent further clarification, it was left to the trial court to interpret whether Long's response to Keltner's inquiry constituted a final refusal to take the test, or whether Long simply declined to take the test at that moment because the twenty-minute period the officer told him he had was still

---

4. Although the trial court did not mention abandonment, implicit in the court's judgment is a finding that Long did not abandon his attempts to contact an attorney.

running and he wished to make further efforts. The trial court apparently believed the latter, and we will not disturb that interpretation.

However, although raised by neither party, we find that the trial court erred in issuing a temporary injunction against the Director and in entering a judgment making the injunction permanent. In *Schildknecht v. Director of Revenue*, 901 S.W.2d 348, 349 (Mo.App. E.D.1995), a motorist's driving privilege was suspended as a result of his arrest for driving while intoxicated. Following an administrative hearing, the motorist's suspension was sustained. *Schildknecht*, 901 S.W.2d at 349. The motorist subsequently filed a two-count petition in the trial court. *Id.* In the first count, the motorist sought a § 302.535.1 trial de novo of his suspension. *Id.* In the second count, the motorist sought injunctive relief, asserting the suspension of his driving privilege violated his due process right. *Id.* The trial court entered an order permanently enjoining the Director from suspending the motorist's driving privilege in the matter and dismissing the first count. *Id.* The Director appealed, contending the trial court lacked subject matter jurisdiction to enter an injunction because the motorist had an adequate and exclusive remedy at law under § 302.535. *Id.* The eastern district agreed, and stated as follows:

> A circuit court lacks jurisdiction to grant equitable relief where there is an adequate remedy at law. *State ex rel. Director of Revenue v. McHenry*, 861 S.W.2d 562, 564 (Mo. banc 1993); *Bradley v. McNeill*, 709 S.W.2d 153, 156 (Mo. App.1986). Section 302.535.1 provides: "Any person aggrieved by a decision of the department may file a petition for trial de novo by the circuit court." *De novo* review is a remedy at law that has been held to be adequate for purposes of challenging the decisions of the Director.

> *See State ex rel. Director of Revenue v. Pennoyer*, 872 S.W.2d 516, 518–19 (Mo. App. E.D.1994).

*Id.*

■ Similarly, in the present case, we hold that Long had an adequate remedy at law, which was to file a petition for trial de novo by the trial court. Therefore, the trial court exceeded its jurisdiction in providing equitable relief. The judgment enjoining the Director is vacated. We remand for dismissal of Long's "application for temporary injunction" and entry of a judgment reversing the Director's revocation of Long's driving privileges.

EDWIN H. SMITH, P.J., and HOLLIGER, J., concur.