Calvin J. CHRISTENSEN, Petitioner–Respondent,

v.

DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent–Appellant.

No. 25380.

Missouri Court of Appeals, Southern District, Division One.

Feb. 25, 2004.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dustin J. Allison, Assistant Attorney General, Jefferson City, for Appellant.

Timothy R. Cisar, Bridges, Cisar & Mizell, Lake Ozark, for Respondent.

PHILLIP R. GARRISON, Judge.

The Director of Revenue ("the Director") appeals from a judgment reinstating the driving privileges of Calvin J. Christensen ("Christensen") after they were suspended due to Christensen's refusal to submit to a chemical test for intoxication. We reverse the trial court's judgment and remand for reinstatement of the suspension.

On the morning of May 25, 2002, Trooper Steven Gisselbeck ("Gisselbeck") of the Missouri State Highway Patrol was on duty when he observed a black Chevrolet Tahoe driven by Christensen. Gisselbeck clocked the truck at sixty-three miles per hour in a fifty-five mile per hour zone, and observed the vehicle cross the centerline three times.

Gisselbeck stopped the truck and requested Christensen's driver's license and proof of insurance. Christensen responded with "very slurred and confused" speech, requiring Gisselbeck to request that he repeat his answers. Gisselbeck also detected a "strong odor of intoxicants" on Christensen's breath. Accordingly, Gisselbeck asked Christensen to get out of the truck and perform several field sobriety tests, to which Christensen agreed.

Christensen first failed the horizontal gaze nystagmus test. Gisselbeck next asked Christensen to recite the alphabet from E to U, which Christensen was able to do, albeit with speech that was slurred, confused, and mumbled. Gisselbeck also

asked Christensen to count backward from ninety-nine to seventy-seven. After starting correctly at ninety-nine, Christensen counted beyond the requested stopping point to seventy-one, again with slurred, confused, and mumbled speech.

Gisselbeck next requested Christensen take a portable breath test, which request Christensen refused. In response, Gisselbeck requested Christensen take another test, the "one-leg stand" test. Gisselbeck testified that Christensen "performed badly" on the test, and that he subsequently failed a final test, the "walk-and-turn" test. After Christensen completed these tests, Gisselbeck placed him under arrest for driving while intoxicated and read him the Miranda warnings.

Gisselbeck transported Christensen to the Camden County Sheriff's Department and, after reading to him the implied consent notification, requested that he take a breathalyzer test. Christensen asked to speak with his attorney, and Gisselbeck provided him with a phone book and told him he had twenty minutes to contact an attorney.

Christensen immediately stated he had to use the restroom, in response to which Gisselbeck provided him with monitored use of the facility's restroom. Christensen urinated, got up to leave, and then told Gisselbeck he also needed to defecate. Gisselbeck asked, "Why don't you talk to your attorney?" Ignoring this advice, Christensen began defecating, during which process Gisselbeck notified Christensen that ten of the twenty minutes allotted to him for contacting an attorney had passed.

In response to Gisselbeck's reminder, Christensen mumbled, "What am I going to do?" before telling Gisselbeck he was going to throw up. At that point, five minutes remained of Christensen's time to contact an attorney. When Gisselbeck told him as much, Christensen asked, "What'll happen if I throw up?" Gisselbeck responded, "If you throw up, I'll have to watch you for another fifteen minutes."

Christensen responded by attempting to insert his fingers into his mouth, presumably in an attempt to induce vomiting. Gisselbeck warned Christensen that to do so would constitute a refusal to submit to blood-alcohol testing. Christensen then inquired, "What if I'm too sick to take the test?" to which Gisselbeck responded, "Then I'll ask for a test of your blood." Christensen began to moan and rub his face upon hearing this response.

After a few more minutes, Gisselbeck informed Christensen that his twenty minutes to contact an attorney had expired and asked him if he would consent to the test. In response, Christensen began wiping his hands in his anus and, ignoring Gisselbeck's warning not to do so, repeatedly put his soiled fingers into his mouth.

Christensen next turned to a nearby water fountain. When Gisselbeck warned Christensen that drinking from the fountain would constitute a refusal of chemical testing, Christensen "turned, . . . looked [Gisselbeck] in the eyes and shook his head and just said, 'So?'" before drinking from the fountain. After taking a second drink of water, Christensen stated he wanted his fifteen minutes to start. Gisselbeck told Christensen he had refused and there would be no further testing.

Pursuant to Section 577.041.1,[1] the Director revoked Christensen's driving privileges for refusal to submit to a chemical test for intoxication. Christensen filed a petition, pursuant to Section 577.041.4, seeking judicial review of the revocation.

---

1. References to statutes are to RSMo (2000) unless otherwise indicated.

## 174

Trial of Christensen's petition was had on October 23, 2002, during which the trial court heard testimony from Gisselbeck and Christensen.

At trial, Christensen testified that he had nothing to drink the night in question, and that he did not recall Gisselbeck asking him any questions related to drinking. He also stated that he did not know how Gisselbeck could have smelled intoxicants on his breath because he did not say anything at all to Gisselbeck. Christensen claimed to have health problems ranging from high blood pressure and high cholesterol to complications stemming from a recent snakebite, which, he contended, contributed to his inability to pass the field sobriety tests. Gisselbeck, however, testified that, when he asked Christensen if he had any physical problems, Christensen stated he did not.

Christensen further testified that he requested an opportunity to speak with an attorney in the patrol car, before refusing the portable breath test. He also stated that when it became apparent to him that Gisselbeck believed he was stalling in the restroom to prolong the testing process, he showed Gisselbeck toilet paper stained with feces. Christensen denied, however, ever inserting his own feces into his mouth.

At the close of evidence, the trial court stated "up front [that it did not] believe [Christensen's] testimony," but that it would take the case under advisement. On December 10, 2002, the trial court entered a docket entry judgment in which it stated that the "real question [was] whether [Christensen] had a reasonable opportunity to contact an attorney[.]" The court determined he did not, entered judgment in favor of Christensen, and ordered the

Director to reinstate Christensen's driving privileges. The Director appeals.

In her sole point on appeal, the Director argues that the trial court erred in reinstating Christensen's driving privileges because the judgment was against the weight of the evidence, unsupported by substantial evidence, and an erroneous application of the law in that Christensen chose not to contact an attorney despite being given twenty minutes in which to do so. We agree.

■ In reviewing matters tried without a jury, the trial court's judgment is to be affirmed unless it is unsupported by substantial evidence, is against the weight of the evidence, or misstates or misapplies the law. *Burleson v. Director of Revenue*, 92 S.W.3d 218, 220 (Mo.App. S.D.2002) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).[2] In cases involving the revocation of a person's driving privileges pursuant to Section 577.041, only three issues are properly to be considered by the trial court—(1) whether the person was arrested, (2) whether the arresting officer had reasonable grounds to believe the person was driving a motor vehicle while intoxicated, and (3) whether the person refused to submit to a chemical test for intoxication. *Burleson* at 220–21; *Mansfield v. Director of Revenue*, 82 S.W.3d 225, 226 (Mo.App. W.D.2002); Section 577.041(4).

■ In the case *sub judice*, only the third statutory question is disputed, i.e., whether Christensen refused a chemical test for intoxication. Arguing he did not refuse such a test, Christensen relies upon authority stating that a person cannot be deemed to have refused such testing where

---

**2.** *Murphy* interpreted the provisions of a former version of Rule 73.01(c). The provisions of that rule now appear in essentially the same form in Rule 84.13(d). Citations to rules are to Missouri Rules of Civil Procedure (2003) unless otherwise indicated.

that person is not afforded a reasonable opportunity to speak to an attorney after having requested to do so. *See, e.g., McMaster v. Lohman,* 941 S.W.2d 813, 817 (Mo.App. W.D.1997). Christensen directs our attention to the portion of Section 577.041.1 providing that

> [i]f a person when requested to submit to any test allowed pursuant to [S]ection 577.020 requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney. If upon the completion of the twenty-minute period the person continues to refuse to submit to any test, it shall be deemed a refusal.

The decisive issue in the instant case is whether Christensen was given a *reasonable* opportunity to contact an attorney. Christensen argues, and the trial court apparently agreed, that "[b]y designating the time Christensen spent in the restroom as his 'reasonable opportunity' to seek legal assistance, ... Gisselbeck failed [to satisfy] the intended purpose of the statute."

The record before us is replete with evidence, much of which is uncontroverted, supporting the conclusion that Christensen engaged in what the State accurately describes as a "cat-and-mouse" game with Gisselbeck in an effort to avoid chemical testing. For example, several minutes before the twenty-minute period to contact an attorney had expired, Christensen made repeated inquiries concerning what would happen if he became ill, and responded to Gisselbeck's reply by attempting to induce vomiting with his fingers. When Gisselbeck told him that if he were too sick to submit to a test of his breath, a blood test would be requested, Christensen was openly despondent.

Even after the statutory time period for attempting to contact an attorney had expired, Christensen continued in his efforts

to frustrate Gisselbeck's attempt to confirm Christensen's intoxication by soiling his hands with feces and placing them in his mouth. Finally, having been warned that to do so would constitute a refusal of testing, Christensen took repeated drinks of water from a water fountain and demanded that his "fifteen minutes" of observation begin.

 "[A]n arrested person has no constitutional right to speak with an attorney prior to deciding whether ... to submit to a breathalyzer test[.]" *Witeka v. Director of Revenue,* 913 S.W.2d 438, 440 (Mo.App. E.D.1996) (citing *Albrecht v. Director of Revenue,* 833 S.W.2d 40, 41 (Mo. App. E.D.1992)). Absent the provisions of Section 577.041.1, then, Christensen had no right to attempt to contact an attorney. The language of that statute requires only that a person requesting to speak to an attorney prior to testing be "granted twenty minutes in which to *attempt* to contact an attorney" (emphasis added). Thus, there is no constitutional *or statutory* right to actually speak to an attorney, only that twenty minutes be granted to attempt to contact an attorney. *See Witeka* at 440 ("Section 577.041.1 contains no guarantee the arrestee will make contact."). Nor, for that matter, is there a *statutory* provision for extending the opportunity to attempt to contact an attorney in order for it to be "reasonable": rather, the statutory twenty minute requirement has been deemed by the courts to be the definition of "reasonable opportunity." *Wall v. Holman,* 902 S.W.2d 329, 331 (Mo.App. W.D.1995) ("reasonable opportunity has been defined by [statute] as being twenty minutes from the time a person requests to speak to an attorney").

In any event, even if it were not the case that simply waiting twenty minutes after Christensen asked to speak to his attorney was, by definition, providing a reasonable

opportunity to do so, we still would find the evidence insufficient to support a finding that Gisselbeck was unreasonable in affording Christensen an opportunity to contact an attorney. Indeed, notwithstanding that he was under no obligation to do so, Gisselbeck reminded Christensen repeatedly of the time remaining of his twenty minute allotment, and even encouraged him to make some attempt to call his attorney. Far from hindering Christensen in any attempt to contact an attorney, Gisselbeck encouraged him to do so, to no avail.

The judgment ordering the Director to reinstate Christensen's driving privileges was not supported by substantial evidence and misapplied the law. As such, it must be, and is hereby, reversed. The case is remanded with directions to reinstate the one-year suspension of Christensen's driving privileges.

BARNEY, P.J., and PREWITT, J., concur.