**Ronald D. STAGGS, Appellant,**

v.

**DIRECTOR OF REVENUE, State
of Missouri, Respondent.**

**No. WD 67214.**

Missouri Court of Appeals,
Western District.

April 17, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 2007.

Application for Transfer Denied
June 26, 2007.

Bruce Brandom Brown, Kearney, MO, for appellant.

James Artelle Chenault, III, Jefferson City, MO, for respondent.

Before JAMES M. SMART, JR., P.J., JOSEPH M. ELLIS, and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

Ronald Staggs appeals the judgment of the circuit court upholding the revocation of his driver's license. His license was revoked by the Director of Revenue for failure to submit to a breathalyzer test of his blood alcohol content. Finding no error in the circuit court judgment, we affirm.

## Procedural and Factual Background

The relevant facts are not in dispute. At approximately 1:53 a.m. on June 22, 2005, Officer Anthony Roetman was notified by the Clay County Sheriff's Department Dispatch of a pickup truck that had just turned northbound onto Highway 169 from Main Street in Smithville, Missouri. A 9-1-1 caller had expressed concern about the manner in which the truck was being driven. Officer Roetman did not see the truck until he drove by a One Stop convenience store. There he observed a truck matching the description and bearing the license plate he was looking for. Officer Roetman waited across the street from the truck.

At about 2:48 a.m., Officer Roetman observed someone walk out of the convenience store and get in the truck. The truck then proceeded southbound on Highway 169. Officer Roetman followed the truck and observed the truck weaving in its lane of traffic, crossing the center line of the two lane divided highway. Officer Roetman activated his lights, and the truck pulled over at Shamrock Way and Highway 169.

Officer Roetman approached the driver in the vehicle. The officer could smell a "very strong" odor of alcohol. He asked the driver if he had been drinking. The driver responded that he had not. The driver appeared to be swaying in his vehicle and went very slowly and deliberately through his wallet while looking for his driver's license. Eventually, he produced a hardship license which identified him as Ronald Staggs.

After checking the license with dispatch, Officer Roetman asked Staggs to exit the vehicle so that he could perform a field sobriety test on him. Officer Roetman performed three field sobriety tests on Staggs, the horizontal gaze nystagmus test, the one leg stand test, and the walk-and-turn test. Staggs performed poorly on all three tests. At that point, Officer Roetman formed an opinion that Staggs's driving ability was impaired and placed Staggs under arrest for driving while intoxicated.

Officer Roetman then placed Staggs in his police car and transported him to the police station. At the police station, Officer Roetman advised Staggs of the "Implied Consent" law, section 577.041. He read from the following to Staggs:

1. You are under arrest for driving while intoxicated.

2. To determine the alcohol/drug content of your blood, I am requesting you submit to a chemical test of your Breath.

3. If you refuse to take the test(s), your driver license will immediately be revoked for one year.

4. Evidence of your refusal to take the test(s) may be used against you in prosecution in a court of law.

5. Having been informed of the reasons for requesting the test(s), will you take the test(s)?

Staggs refused to take a breathalyzer test. After this, Officer Roetman advised Staggs of his *Miranda* rights. At that point, Staggs requested to speak with an attorney.

Staggs's driver's license was revoked by the Director of Revenue for refusal to take the breathalyzer test. Staggs petitioned the Circuit Court of Clay County for review of the revocation. A hearing was held on May 22, 2006.

The Circuit Court upheld the revocation, finding (1) that Staggs was arrested in Clay County, Missouri, (2) that the arresting officer had reasonable grounds to believe that Staggs was driving a motor vehicle while in an intoxicated condition, and (3) that Staggs refused to submit to the test. Staggs appeals, contending only with the circuit court's finding that he refused to submit to the test.

## Standard of Review

To uphold the revocation of a driver's license for refusal to take a breathalyzer test, the circuit court must determine only that the driver was arrested, that the arresting officer had reasonable grounds to believe the driver was driving while intoxicated, and that the driver refused to submit to the test. Section 577.041.4 RSMo;[1] *Brown v. Dir. of Revenue*, 34 S.W.3d 166, 169 (Mo.App. 2000). The Director of Revenue has the burden of proof on all these issues. *Brown*, 34 S.W.3d at 169. Failure to prove all three elements will result in the reinstatement of the driver's license. *Id.* As in all other judge-tried cases, we will uphold the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the

law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## Analysis

Staggs argues that his refusal to submit to the test was not an informed refusal and, therefore, not valid, because he was not informed of his ability to contact an attorney. Staggs acknowledges that this court has rejected such arguments already. *See, e.g., Akers v. Dir. of Revenue*, 193 S.W.3d 325 (Mo.App.2006); *see also Sweatt v. Dir. of Revenue*, 940 S.W.2d 540, 543 (Mo.App.1997). He argues, however, that these cases were erroneously decided and that we should overrule them to the extent that they hold that an officer is not required to inform an arrestee of his ability to attempt to contact an attorney.

Staggs first argues that the holding in *Akers*, and similar cases, is not in harmony with the spirit of the statute, and sections 577.041 and 577.020 should be read *in pari materia* with other relevant statutes, such as section 544.170 and the cases applicable to that statute. Section 544.170 relates to how long a suspect can be detained without a warrant and without criminal charges being filed. Because section 544.170 has nothing to do with a driver's right to contact an attorney before taking a chemical test of his blood alcohol content, we fail to see that we are to read it *in pari materia* with section 577.041. More importantly, Staggs's argument fails for two main reasons. First, the language of the statute is clear and unambiguous and requires no resort to the rules of statutory construction. *See Teson v. Dir. of Revenue*, 937 S.W.2d 195, 198 (Mo. banc 1996). Second, none of the cases on which Staggs relies to make his argument actually support the notion that an officer is required

---

1. All statutory references are to Missouri Revised Statutes, 2000.

to inform an arrestee that he may contact legal counsel.

Driving on the highways and roads of this state has been held to be a privilege, not a right. *Douglass v. Wilson,* 10 S.W.3d 199, 204 (Mo.App.2000) (overruled on other grounds by *Verdoorn v. Dir. of Revenue,* 119 S.W.3d 543, 547 (Mo. banc 2003)). The legislature is permitted to place conditions on the privilege. *See id.* Under the Implied Consent Law, a driver who operates a motor vehicle on Missouri roads is deemed to have impliedly consented to a chemical test of his blood alcohol content. Section 577.020.2; *Akers,* 193 S.W.3d at 328. The driver may withdraw that consent; however, in doing so the driver makes his license subject to revocation. Section 577.041.1; *Akers,* 193 S.W.3d at 328. Because revocation is a severe consequence, the officer requesting the test is required to give the driver certain statutorily mandated information. *Id.* Section 577.041.1 mandates that the officer inform the driver of the reasons for requesting the driver submit to the test, that evidence of refusal to take the test may be used against him, and that his license shall be immediately revoked upon refusal to submit to the test. *Id.* If the officer omits any of this statutorily necessary information, the driver's refusal to take the test is not valid because the driver is deemed to not have made a voluntary withdrawal of his implied consent. *Akers,* 193 S.W.3d at 328.

The driver may request to speak to an attorney. If he does so, the statute mandates that he be given "twenty minutes in which to attempt to contact an attorney." Section 577.041.1; *Schussler v. Fischer,* 196 S.W.3d 648, 651 (Mo.App. 2006). After twenty minutes has expired, if the driver still refuses to take the test, the refusal is final. *Id.* Missouri courts have held that the objective of section

577.041.1 is satisfied if the driver is given an opportunity to attempt to contact an attorney and the driver abandons the attempt or the twenty minute period expires without contact being made. *Lorton v. Dir. of Revenue,* 985 S.W.2d 437, 441 (Mo. App.1999). However, if the driver requests to speak to an attorney, but is not given a twenty minute opportunity to do so, the refusal cannot be valid. *Id.; see also McMurray v. Dir. of Revenue,* 800 S.W.2d 820 (Mo.App.1990). The twenty minute period does not begin until after the officer gives the statutorily mandated information to the driver, regardless of when the driver makes the request. *McMaster v. Lohman,* 941 S.W.2d 813, 817 (Mo.App.1997).

"It is a well-recognized principle that if the language of the statute is clear, the court must give effect to the language *as written.*" *Schussler,* 196 S.W.3d at 651 (emphasis added). The Missouri Supreme Court has indicated that the language of the statute is clear and unambiguous and requires no resort to the rules of construction. *Teson,* 937 S.W.2d at 198.

The statute specifies the information the officer is required to give the driver:

> The request of the officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test.

Section 577.041.1. The statute contains no mandate that the officer inform the driver that he may attempt to contact an attorney, although the statute specifies other information that the officer is to give the driver. Instead, the statute then goes on to specify:

If a person when requested to submit to any test allowed pursuant to section 577.020 requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney. If upon the completion of the twenty-minute period the person continues to refuse to submit to any test, it shall be deemed a refusal.

*Id.* The statute, then, does not command the officer to inform the driver of his ability to contact an attorney, but does allow a driver who wishes to contact an attorney the ability to attempt to do so. "As indicated by the express language of the statute, the right to contact an attorney is triggered only if the driver specifically requests to talk to his lawyer." *Akers,* 193 S.W.3d at 328.

The statute does not guarantee that the driver will be allowed to talk to his attorney. It provides merely that he be given twenty minutes to attempt to contact his attorney. At the end of the twenty minute period, regardless of whether or not the driver was successful in his attempts to contact his attorney, he must make a final decision as to whether or not he is going to take the test. Our courts have upheld the revocation of licenses of drivers who attempted to contact their attorneys but were unsuccessful in doing so, *see Schussler,* 196 S.W.3d at 650, or who requested to talk to an attorney, but then abandoned the attempt to do so. *See Christensen v. Dir. of Revenue,* 128 S.W.3d 171, 173 (Mo. App.2004). The officers, of course, are not permitted to hinder the driver in his attempts to talk to an attorney. *See McMurray,* 800 S.W.2d at 821. These holdings are consistent with the statutory mandate that the officer must inform the driver of the items specified in the statute; and if the driver requests to speak to an attorney, the officer must allow him twenty minutes *after* the officer has informed the driver of the consequences of refusing the test. The officer is also not permitted to hinder the driver from attempting to contact his attorney. The statutory language does not create a duty for the officer to inform the driver of his right to attempt to contact an attorney.

Staggs relies on *Spradling v. Deimeke,* 528 S.W.2d 759 (Mo.1975), *Teson v. Director of Revenue,* 937 S.W.2d 195 (Mo. banc 1996), and *Schussler v. Fischer,* 196 S.W.3d 648 (Mo.App.2006). These cases do not support his position. In *Spradling,* the court held that although a driver is entitled to consult with his attorney before taking the test, he is not permitted to delay the test until his attorney was present or to condition his taking the test on the presence of his attorney. *Spradling,* 528 S.W.2d at 765. Language in this case is actually contrary to Staggs's position. The court stated:

Neither the request to take a breathalyzer test nor the administration of the test involves interrogation of the arrested person. It simply calls for an affirmative or negative response, neither of which is incriminating in any respect. The court has considered the above-decided cases and holds that an arrested person does not have a constitutional right to consult with an attorney prior to deciding whether or not to submit to a breathalyzer test and does not have a constitutional or statutory right to have an attorney present at such test nor to condition his consent to take the test on an attorney being present.

*Id.* at 764. The court in *Spradling* emphasized that the right to consult an attorney under the statute was solely a statutory right, not a constitutional one. *Id.* Because the right is merely statutory, rather than constitutional, it is limited, and the officer is not required to inform the driver of it.

Next, in *Teson,* the court held that section 577.041.1 mandates that the officer use the language from the statute when he informs the driver of the Implied Consent Law. *Teson,* 937 S.W.2d at 196. Staggs relies on language in the case which states:

The purpose of the warning provided in section 577.041.1 is to inform an apparently inebriated driver of the consequences that follow a refusal to consent to a chemical test to determine blood alcohol content. Ignoring the internal inconsistency of a system that demands that inebriated persons be given information from which to render an informed decision, the statute demands that a law enforcement officer provide an arrestee with information upon which the arrestee may make a voluntary, intentional and informed decision as to whether or not to submit to the chemical test.

*Id.* at 197. Staggs recognizes that an inebriated driver is in need of more assistance than a sober one and argues that, accordingly, the officer should also be required to inform the driver of his ability to contact an attorney. *Teson* does not support this position. Immediately after expressing the above language, the court went on to say:

If the purpose of the warning is to provide information, a warning is sufficient for purposes of due process unless the words used either (1) fail to inform the arrestee of all of the consequences of refusal or (2) mislead the arrestee into believing that the consequences of refusal are different than the law actually provides.

*Id.* The court, therefore, did not indicate that the officer was to inform the driver of anything more than what is statutorily mandated. The driver in that case had not been informed that he could speak to an attorney. The court concluded that be-cause the driver in that case had learned from the officer that refusal to take the test would result in revocation of his license, the driver had been adequately informed. *Id.* at 198.

Finally, in *Schussler,* the court held that the twenty minutes mandated by section 577.041.1 begins running after the officer reads the Implied Consent Law to the driver, regardless of whether the driver requests to speak to an attorney before or after it is read to him. *Schussler,* 196 S.W.3d at 652. Again, Staggs relies on specific language in *Schussler,* specifically, where the court indicates that most drivers are not aware of section 577.041.1's twenty minute provision, but would be more aware of the rights articulated in *Miranda. Id.* The court in *Schussler,* however, specifically stated, "[m]ost drivers are probably not aware of section 577.041.1's twenty minute provision and the statute *does not require officers to inform drivers that if they request an attorney after being read the Implied Consent Law they will be given twenty minutes to attempt to contact an attorney." Id.* (emphasis added). That court thus recognized that officers are not required to inform drivers that they may contact an attorney.

Staggs contends that his argument is made not from any one of these cases, but from the "spirit of the statute" as expressed by all cases dealing with section 577.041. We cannot find any authority for such a "spirit of the statute" in the statute itself or the cases we have reviewed. All cases have recognized that the statute mandates what the officer is supposed to tell the driver, and none recognize a duty of the officer to inform the driver that he may contact an attorney. All cases decided thus far have recognized the difference between the constitutional right to an at-

torney and the right articulated in section 577.041.1.

Staggs acknowledges that the right to contact an attorney in section 577.041 is statutory and not derived from the rights recognized in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Brown*, 34 S.W.3d at 171. However, he contends that the reasoning for extending a warning in *Miranda* applies equally in the case of an officer informing an inebriated person about his rights under the Implied Consent Law. While that may be true, we do not have the ability to rewrite the statute in accordance with our views or Staggs's view of what would be helpful or appropriate.

The reason for contacting an attorney is to get an attorney's view of the consequences of refusing to take the test. *Crabtree v. Dir. of Revenue*, 65 S.W.3d 557, 559 (Mo.App.2002). The information the officer is statutorily required to provide the driver is also intended to perform the same function. *Douglass*, 10 S.W.3d at 204. The purpose is to allow the driver the opportunity to make an informed decision as to whether to take the test. *Crabtree*, 65 S.W.3d at 559. The purpose is not to protect a fundamental right.

The right to counsel recognized in *Miranda* (in order to protect the right to be free from incriminating oneself) is fundamental, absolute, and unconditional. *Akers*, 193 S.W.3d at 329. It has no time limits and there are no adverse consequences for refusing to speak to authorities without counsel present. *Id.* On the other hand, the right under section 577.041.1 is qualified and conditional. *Id.* The driver is permitted only twenty minutes to attempt to contact an attorney. An adverse consequence results from failing to submit to the test after the twenty minutes has expired. *Id.* The driver also has no statutory right under section

577.041 to actually speak to an attorney. The driver has only a right to have twenty minutes to attempt to contact an attorney. *Christensen*, 128 S.W.3d at 175. The officer's authority to request that a driver take the test is not conditioned upon that person being advised of anything other than what the statute mandates. *Akers*, 193 S.W.3d at 329. A driver has no *constitutional* right to speak with an attorney prior to deciding whether to take the test or to have an attorney present during the testing. *Wilmoth v. Dir. of Revenue*, 903 S.W.2d 595, 598 (Mo.App.1995) (overruled on other grounds by *Brown*, 34 S.W.3d at 174).

Staggs's reliance on language in *Miranda* is misplaced. In *Miranda* the court states:

> With a lawyer present the likelihood that the police will practice coercion is reduced, and if coercion is nevertheless exercised the lawyer can testify to it in court. The presence of a lawyer can also help to guarantee that the accused gives a fully accurate statement to the police and that the statement is rightly reported by the prosecution at trial.

*Miranda*, 384 U.S. at 470, 86 S.Ct. 1602. The focus in *Miranda* is entirely on interrogation tactics and techniques. A chemical test of one's blood alcohol content is not interrogation. Regardless of whether the driver speaks to an attorney or not, the properly arrested driver has only two options: (1) take the test, or (2) refuse the test and (a) have his licensed revoked, and (b) have his refusal used against him in court. In *Miranda*, the United States Supreme Court emphasized that the right to counsel is necessary to protect the Fifth Amendment privilege against self-incrimination. *Id.*

Staggs focuses on language in *Miranda* which states:

The defendant who does not ask for counsel is the very defendant who most needs counsel. We cannot penalize a defendant who, not understanding his *constitutional* rights, does not make the formal request and by such failure demonstrates his helplessness. To require the request would be to favor the defendant whose sophistication or status had fortuitously prompted him to make it.

*Id.* at 471, 86 S.Ct. 1602 (*quoting People v. Dorado*, 62 Cal.2d 338, 42 Cal.Rptr. 169, 398 P.2d 361, 369–70 (1965)) (emphasis added). The Court stated that the need to be advised of the right to counsel is based on the accused's *constitutional* rights. As we have noted, the right to contact counsel in section 577.041.1 is a statutory right and is not derived from the United States or Missouri constitutions. Arguments based on the concept of being fair to the less informed person are arguments to be addressed to the legislature.

It is not our job to provide a different "bright line" rule from that already provided by the General Assembly. *See Moody v. Dir. of Revenue,* 14 S.W.3d 729, 731–32 (Mo.App.2000).

## Conclusion

The trial court did not erroneously declare or apply the law; the judgment is affirmed.

ELLIS and HARDWICK, JJ., concur.