**Barton L. WHITE, Petitioner–Respondent,**

v.

**DIRECTOR OF REVENUE, Respondent–Appellant.**

**No. 28497.**

Missouri Court of Appeals, Southern District, Division Two.

June 26, 2008.

---

Jeremiah W. (Jay) Nixon, Atty. Gen., and Nicole L. Loethen, Associate Solicitor, Jefferson City, MO, for appellant.

William O. Worsham, Springfield, MO, for respondent.

GARY W. LYNCH, Chief Judge.

The Director of Revenue ("Director") revoked the driver's license of Barton L. White ("White") under section 577.041, due to White's alleged refusal to submit to a blood alcohol test. White filed a petition for review with the trial court, and, following a hearing, the trial court entered a judgment ordering the Director to reinstate White's driver's license. The Director appeals, contending the trial court's judgment is unsupported by the evidence because the Director presented uncontroverted evidence establishing all three statutory elements required to revoke White's license: (1) White was arrested; (2) there were reasonable grounds to believe White was driving while intoxicated; and (3) White refused a blood alcohol test and

abandoned any attempt to contact an attorney. Because we find that the trial court's judgment is supported by the evidence, we affirm.

### Factual and Procedural Background

Viewing the evidence in the light most favorable to the trial court's judgment, *Findley v. Director of Revenue*, 204 S.W.3d 722, 725 (Mo.App.2006), the following facts were adduced at trial:

At approximately 1:30 a.m. on August 6, 2006, Officer Craig Thorell of the El Dorado Springs Police Department was on patrol, driving down Main Street. He saw a truck coming toward him that appeared to be speeding, so he turned on his emergency lights and pulled the truck over. White was the driver of the truck. Officer Thorell could smell the odor of alcohol on and around White and on his breath. Officer Thorell informed White that he was pulled over for speeding, and asked White for his driver's license. White handed him restricted driving privilege paperwork, which allowed White to drive to work, school or an alcohol treatment program. Officer Thorell had never dealt with such paperwork, so he contacted Sergeant Jared Scherick who arrived on the scene a few minutes later. Sergeant Sherick told Officer Thorell that he had just seen White leave the Parkside Lounge and get into his truck and drive away. He told Officer Thorell that it appeared White was in violation of his restricted license. Officer Thorell then arrested White for "driving while suspended."

As Officer Thorell escorted White to the patrol car, he again smelled alcohol on White's breath and saw that he had watery eyes. At the police station, White also had trouble getting out of the patrol car, dragging his feet across the carpet and getting his foot stuck in the plastic on the door sill. Once out of the car, White swayed in a circular motion, and Officer Thorell assisted him as they walked into the police station. Officer Thorell and Sergeant Sherick both performed the horizontal gaze nystagmus test on White inside the station.[1] White stated he could not perform the walk-and-turn test or the one-legged-stand test because he had a bad knee. The officers observed that White's speech was slightly slurred, his eyes were bloodshot and watery, he had a hard time focusing on one object, he swayed in a circular motion while standing and he could not walk in a straight line.

Officer Thorell prepared the paperwork "for the blood alcohol content" and read White his *Miranda*[2] rights "directly off the alcohol form." White said that he did not understand, and Officer Thorell attempted to explain them in more detail. White told Officer Thorell he only had a seventh-grade education and wanted that written on the form. As noted by Officer Thorell, at 2:25 a.m. White told Officer Thorell he wanted an attorney present while he was being questioned. Officer Thorell continued to question White about whether or not he understood the implied consent warnings[3] and asked him twice if he would submit to a breath test. White said no.

Officer Thorell then gave White a phone book and told him he could call an attorney. White made no attempt to look at the phone book or call an attorney, so Officer Thorell asked Sergeant Sherick to

---

1. The results of this test were not admitted into evidence because the trial court sustained White's objection that the Director did not lay sufficient foundation for the officers' qualifications to perform the test.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. See section 577.020.

come in and explain the process to White. Sergeant Scherick advised White that he was under arrest for driving while intoxicated, that they were requesting a breath test from him and that his license would be revoked if he refused. Sergeant Scherick also informed White that he had twenty minutes to contact an attorney and gave him the phone book and showed him the telephone. According to Sergeant Scherick, White stated that he had a constitutional right to an attorney, that they had to appoint one for him, and that they were violating his civil rights by not appointing one for him. According to both officers, White became increasingly hostile, threatening to "kick their butts" and calling them "candyass motherfuckers." Sergeant Sherick told Officer Thorell to continue, wait the full twenty minutes, then prepare the refusal form if White did not make a decision about the breath test. However, at 2:32 a.m.—only seven minutes from when White stated he wanted an attorney present—Officer Thorell decided to lock White in a holding cell and recorded that White had refused to submit to the breath test.

White's driver's license was subsequently revoked by the Director, and White filed a petition for review with the trial court. At the hearing on White's petition, Officer Thorell and Sergeant Sherick testified to the foregoing facts. White testified that he remembered being arrested for driving on a suspended license. He stated that the first time he learned he was arrested for driving while intoxicated was when he was released later that morning. Following the hearing, the trial court entered its judgment ordering the Director

to reinstate White's driver's license. This appeal followed.[4]

### STANDARD OF REVIEW

Our review of a bench-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Therefore, we will affirm the trial court's decision unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. When assessing the sufficiency of the evidence, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment. *Findley*, 204 S.W.3d at 725. All contrary evidence and inferences are disregarded. *Id.* When the facts of a case are contested we defer to the trial court's determinations regarding those facts. *Fick v. Director of Revenue, State of Missouri*, 240 S.W.3d 688, 690–91 (Mo. banc 2007). If the facts of a case are not contested, then the issue is legal and there is no finding of fact to which to defer. *Guhr v. Director of Revenue*, 228 S.W.3d 581, 585 n. 3 (Mo. banc 2007). "We consider all fact issues upon which no specific findings were made to have been found in accordance with the result reached." *Findley*, 204 S.W.3d at 725. "A trial court may accept or reject all, part or none of the testimony of any witness, and this Court must defer to the ability of the trial court to judge the credibility of a witness and ascertain the facts." *Foster v. Director of Revenue*, 186 S.W.3d 928, 930 (Mo.App.2006).

### Discussion

Missouri's implied consent law provides that "[a]ny person who operates a motor

4. White did not file a brief. "While there is no penalty for that omission, it requires this court to adjudicate [an appellant's] claims of error without the benefit of whatever argument, if any, [the respondent] could have made in response." *In re Estate of Klaas*, 8 S.W.3d 906, 908 (Mo.App.2000).

vehicle upon the public highways of this state shall be deemed to have given consent to ... a chemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood[.]" Section 577.020.1.

Under the implied consent statutory framework, a driver may refuse to submit to a chemical test requested by an officer. [Section] 577.041.1. If the driver refuses even after being informed that refusal will result in immediate revocation of the driver's license, the officer, on behalf of the director, personally serves the driver with notice of license revocation and issues a fifteen-day temporary permit. *Id.* The officer must submit to the director a certified report, made under penalties of perjury, that includes a statement that the officer had reasonable grounds to believe the driver was driving while intoxicated and that the driver refused to submit to a chemical test. [Section] 577.041.2. Upon receiving the officer's report, the director revokes the driver's license for one year. [Section] 577.041.3.

*Guhr*, 228 S.W.3d at 583–84.

■ A person whose license has been revoked for refusal to submit to a chemical test may petition for review by a circuit court in the county in which the arrest occurred. Section 577.041.4. At the hearing, the court shall determine only: (1) whether or not the person was arrested; (2) whether or not the officer had reasonable grounds to believe the person was driving while intoxicated; and (3) whether or not the person refused to submit to the test. *Id.* "The Director has the burden of establishing each element by a preponderance of the evidence." *Foster*, 186 S.W.3d at 930–31. "If the court determines any issue not to be in the affirmative, the court shall order the [D]irector to reinstate the

license or permit to drive." Section 577.041.5.

The Director's sole point relied on contends that the trial court's judgment ordering the reinstatement of White's license is unsupported by the evidence because the Director presented uncontroverted evidence establishing the three requirements to revoke White's driver's license: (1) White was arrested; (2) there were reasonable grounds to believe White was driving while intoxicated; and (3) White refused a blood alcohol test and abandoned any attempt to contact an attorney.

■ First of all, the Director's argument that the judgment should be reversed merely because the evidence was uncontroverted is without merit. The Director argues, "White did not offer any evidence to controvert the Director's evidence on any of the three elements; White only offered testimony that the officers never arrested him specifically for driving while intoxicated—a fact that is not relevant. Thus, this Court should reverse the trial court's judgment[.]" The Director "fails to perceive the distinction between uncontradicted evidence and uncontested facts." *Furne v. Director of Revenue*, 238 S.W.3d 177, 181 (Mo.App.2007).

As *Guhr* makes clear, the trial court is free to disbelieve even uncontradicted evidence and testimony, and it is only where the facts are uncontested, and not where the evidence is not contradicted, where no deference is due to the trial court. *Guhr*, 228 S.W.3d at 585 n. 3. Thus, even where the evidence is not contradicted, unless the facts of the case are not contested in any way, this Court must give deference to the trial court's determination[.]

*Furne*, 238 S.W.3d at 181.

Here, the facts of the case were contested because White did not concede to the

evidence presented by the Director in that he attempted to discredit both of the officers' testimony through cross-examination. *See id.* While the evidence may not be contradicted by White through offering his own evidence, it is contested. We therefore must defer to the trial court's determination of the facts because it was free to disbelieve any of the contested evidence, even if it was uncontroverted. *Id.*

Turning to the Director's argument that it proved all three statutory requirements, as we previously stated, the trial court was required to order the Director to reinstate White's license if it found that any one of the three requirements from section 577.041.4 was not proved. The trial court did not make specific findings of fact in its judgment, stating only: "the Court finds issues in favor of Petitioner herein." Therefore, we must view the facts in the light supporting the trial court's determination that at least one of the three statutory requirements was not satisfied. *Findley,* 204 S.W.3d at 725. We will begin with the third requirement, whether or not White refused to take the test, because our conclusion on that issue is dispositive of this case.

A "refusal," for purposes of the implied consent statutes, occurs when the driver of his own volition declines to take the test. *Foster,* 186 S.W.3d at 930. A qualified or conditional consent or refusal is considered a refusal, except where the consent or refusal is conditioned on having an opportunity to speak with an attorney. *Id.* Although there is no constitutional right to speak with an attorney prior to deciding whether to submit to a breath test, *State v. Foster,* 959 S.W.2d 143, 146 (Mo.App.1998), section 577.041.1 does provide a limited statutory right to confer with an attorney prior to making that decision:

> If a person when requested to submit to any test allowed pursuant to section 577.020 requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney. If upon the completion of the twenty-minute period the person continues to refuse to submit to any test, it shall be deemed a refusal.

The purpose of this provision is to provide a person with a reasonable opportunity to contact an attorney to make an informed decision as to whether to submit to a chemical test. *Schussler v. Fischer,* 196 S.W.3d 648, 653 (Mo.App.2006). This purpose is met when the person attempts to contact an attorney unsuccessfully and the twenty-minute statutory period expires, or the person abandons the attempt. *Burdynski v. Director of Revenue,* 192 S.W.3d 483, 486–87 (Mo.App.2006). This limited right to contact an attorney is not triggered unless the person specifically requests to talk to an attorney. *State v. Foster,* 959 S.W.2d 143, 146–47 (Mo.App. 1998). If the person requests to speak to an attorney but is not given a twenty-minute opportunity to do so, the refusal cannot be valid. *Staggs v. Director of Revenue,* 223 S.W.3d 866, 870 (Mo.App. 2007); *Christensen v. Director of Revenue,* 128 S.W.3d 171, 175 (Mo.App.2004). "[T]he statutory twenty[-]minute requirement has been deemed by the courts to be the definition of 'reasonable opportunity[.]'" *Christensen,* 128 S.W.3d at 175. In order to ensure that the person is able to make an informed decision, the twenty-minute period does not begin running until after the officer informs the person of the statutorily mandated information from the implied consent law, regardless of when the person makes the request for the attorney. *Staggs,* 223 S.W.3d at 870; *Schussler,* 196 S.W.3d at 653.

In this case, the Director argues that the twenty-minute period to contact an attorney was not triggered because White did not ask to speak to an attorney until after he refused to take the test. The portion of Officer Thorell's initial direct testimony relied upon by the Director does not clearly support this proposition. Regardless, however, viewing the evidence in accordance with the trial court's decision to reinstate White's license, it supports that White did request an attorney before he refused to take the test and, thus, the twenty-minute period was triggered. *See Findley*, 204 S.W.3d at 725.

Later in Officer Thorell's direct testimony [5], he explicitly testified that, when he was reading White the *Miranda* warnings, White asked to have an attorney present and that occurred *prior to* White refusing to take the breath test. Officer Thorell then continued advising White of the implied consent warnings, and then asked White more than once if he would submit to a breath test. After that, even though White did state that no, he would not take the test, Officer Thorell gave White a phone book and told him he could contact an attorney. Officer Thorell then called Officer Scherick in to explain the implied consent law to White, and Officer Scherick told White he had twenty minutes to contact an attorney. The testimony of both officers was that throughout their attempts to inform White of his *Miranda* rights and the informed consent law, White continually accused them of denying him his right to an attorney. They responded by repeatedly giving him the phone book and telling him to call an attorney. Both officers apparently believed that the twenty-minute period had been triggered, especially Officer Scherick who told Officer Thorell to give White the full twenty minutes before marking down his refusal.

Even though White said "no" at the times Officer Thorell requested him to take the breath test, the trial court could have reasonably inferred that these refusals were conditioned upon White speaking with an attorney, *Foster*, 186 S.W.3d at 930, based upon White's continued request for an attorney when both officers explained the implied consent law to him. His negative response to Officer Thorell's request was intertwined with his continual requests for an attorney, so the evidence supports a finding that White requested to speak with an attorney in accordance with the statute, triggering the twenty-minute provision.

The twenty-minute period began running when White was advised of the informed consent law. *Schussler*, 196 S.W.3d at 653. White was informed initially by Officer Thorell, and again by Officer Scherick. No matter which of those

---

5. Officer Thorell's testimony during direct examination by the State was:

[STATE:] Okay. Now did you talk—or ask him more than one time whether or not he would submit to the breathalyzer?
[THORELL:] Yes, sir. I asked him. I believe Sergeant Scherick also asked him to submit to the breathalyzer.
[STATE:] And his response was?
[THORELL:] No.
[STATE:] Both time[s]?
[THORELL]: Yes.

[STATE]: Now was his response prior to him asking for an attorney or after, or do you remember?
[THORELL]: I do not recall at this time.
[STATE:] If—Would it be reflected in your AIR?
[THORELL:] I believe that might help to—
[STATE:] Would that help you remember if you could look at it?
[THORELL:] Yes, sir.
[STATE:] If you would please look at it and—
[THORELL:] He informed me that he wished to have an attorney prior to refusing to submit to the breath test.

two attempts is considered as triggering the twenty-minute period, White was not given the full twenty minutes. The evidence shows that Officer Thorell recorded White's final refusal only seven minutes from when White initially requested an attorney, which was *before* the initial attempt by Officer Thorell to advise White of the informed consent law. Therefore, White was denied his full twenty-minute period to contact an attorney, and his refusal is not valid. *Staggs,* 223 S.W.3d at 870.

The Director argues that even if the twenty-minute period was triggered, White abandoned any attempt to contact an attorney and, therefore, was not entitled to receive the full twenty minutes. There is no direct evidence in the record that White abandoned his attempt to contact an attorney. Therefore, the Director is actually arguing that the trial court was required to infer from the evidence that White abandoned his attempt. The Director contends this inference should have been drawn by the trial court from the facts that "White did not make any effort to look at the phone book, and he did not make any effort to get out of the chair he was sitting in and go to the phone, which was 6–8 feet away. Nor did White ever ask the officers to read any attorney listings or dial any numbers for him. Instead, White began to utter threats and showed no intention of calling an attorney." While the trial court could have drawn such an inference from the evidence presented, its judgment in favor of White indicates that it did not. Thus, the Director's inference that White abandoned his attempt to contact an attorney is contrary to the judgment, and under our standard of review we are required to disregard all contrary inferences. *Findley,* 204 S.W.3d at 725.

"[T]he fact that the requirements of section 577.041.1 are not satisfied does not automatically warrant relief to a person, but instead requires that the person be actually prejudiced as a result of an officer's non-compliance with the statutory requirements." *Bacandreas v. Director of Revenue,* 99 S.W.3d 497, 500–01 (Mo.App. 2003). "Under the actual prejudice standard, the issue is whether the person suffered any actual prejudice as a result of being denied twenty minutes to contact his or her attorney after being advised of the Implied Consent Law." *Id.* The "Director bears the burden on this issue." *Id.*

As we previously stated, White was only given seven minutes after this initial request for an attorney to contact an attorney—not even half of the time required by the statute. "The ultimate goal is that any refusal to take a test is voluntary and unequivocal.... Of course, the simplest way to be sure is to give the driver the period of time mandated by the Legislature[.]" *Long v. Director of Revenue,* 65 S.W.3d 545, 550 (Mo.App.2001). Had White been given the full twenty-minute period, he may have decided to call someone. The trial court could have reasonably drawn such an inference from the evidence and also could have disbelieved Officer Thorell's conclusory testimony that White was a threat to his safety, and was not going to make any attempt to contact an attorney. Accordingly, White was prejudiced by not being given a reasonable opportunity to contact an attorney.

We find that the trial court's judgment ordering the Director to reinstate White's license is supported by evidence that White did not refuse a chemical test as required by section 577.041.4 because White was not given a reasonable opportunity to contact an attorney pursuant to section 577.041.1. Section 577.041.5. The Director's point on appeal is denied.

### Decision

The judgment of the trial court is affirmed.

BARNEY, P.J., and BURRELL, J., concur.